MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. WILLIAMS.

4-6197 148 S. W. 2d 644

Opinion delivered February 10, 1941.

*Henry Donham* and *Harvey G. Combs,* for appellants.
*John S. Mosby,* for appellee.

SMITH, J. On April 12, 1939, B. Frank Williams, doing business as Williams Bus Line, filed an application with the Arkansas Corporation Commission, under the provisions of §§ 2023, *et seq.,* Pope's Digest, for a permit, or certificate of convenience and necessity, to transport passengers, baggage, newspapers, and express, between Osceola and Little Rock over the following State highways: On 40, from Osceola to Marked Tree, 35 miles; on 63, from Marked Tree to junction of No. 14, 5 miles; on No. 14, from junction of 63 to Newport, 53 miles; on 67, from Newport to Little Rock, 98 miles.

At the hearing of the application, the Missouri Pacific Railroad Company, the Missouri Pacific Transportation Company, the Mathis Bus Line, and the Arkansas Motor Coaches, intervened, and protested the granting of the application, on the ground that no public convenience or necessity would be served by granting the

application. The application was granted, and from that order the Railroad Company, the Transportation Company, and the Mathis Bus Line appealed to the Pulaski circuit court.

A motion to dismiss the appeal was filed in the circuit court, and there overruled, but the action of the Corporation Commission in granting the permit was approved, from which order and judgment is this appeal.

The motion to dismiss the appeal has been renewed here, and in support of that motion the case of *Jones Truck Lines Co.* v. *Powell Brothers Truck Lines, Inc.,* 196 Ark. 759, 119 S. W. 2d 1032, is cited and relied upon.

The order of the Corporation Commission granting the permit was entered of record July 31, 1939, and appellants prayed an appeal on August 21, 1939, and on November 23, 1939, filed a transcript of the proceedings before the Corporation Commission in the office of the circuit clerk of Pulaski county.

It is apparent that the instant case is distinguishable from the Jones Truck Lines case, *supra,* in that, here the appeal was prayed within thirty days, the time allowed by law for that purpose; whereas, in the Jones case, *supra,* it was sought to extend that time by filing with the Commission a petition for rehearing. It was there held that a motion for rehearing was no longer required, and that the time for appeal could not be thus extended.

It is further insisted that the appeal should be dismissed for the reason that it was not prosecuted with the diligence required by § 2019, Pope's Digest. That section provides that when an appeal has been prayed "The secretary of said Commission shall then at once make full and complete transcript of all proceedings had before such commission in such matter and of all evidence before it in such matter, including all files therein, and deposit same forthwith in the office of the clerk of said circuit court, . . . ." The insistence is that this was not done forthwith.

The hearing before the Commission began May 10, 1939, and was continued from day to day with intervening adjournments, which prevented the hearing from being continuous, until 6:30 p. m., June 2, 1939, at which time the application was taken under advisement, and it was not until July 31, 1939, that the final order of the Commission was made and entered upon its records. Many witnesses from various points along the routes proposed to be served testified, and many exhibits were offered in evidence. These consisted, in part, of time-tables, tariff sheets of fares, and compilations of passengers carried, showing the service rendered and the ability of appellants, with their present facilities, to accommodate and carry many more passengers than the number which had been transported.

There appears to have been no delay for which appellants were responsible. The proceedings before the Commission were reported stenographically by "Dorothy Dixon, Reporter for the Arkansas Corporation Com mission," and her certificate as such to the transcription of her notes was not made until November 1, 1939. The certificate of the Secretary of the Commission to the transcript required by the portion of § 2019, Pope's Digest, copied above, was not made until November 18, 1939, and the transcript, as certified by the Secretary of the Commission, was filed with the clerk of the circuit court on November 23, 1939, only five days later.

In the case of *Lincoln* v. *Field*, 54 Ark. 471, 16 S. W. 288, Justice Hemingway defined the word forthwith as follows: "Webster defines forthwith as meaning: 'Immediately, without delay, directly,' while Worcester gives the same definition, omitting 'directly.' In this sense if an act is directed to be done forthwith, it seems to exclude the idea of other acts intervening between the direction and its execution. But as some time is necessary to the doing of everything, varying in length with the thing to be done, the word has in law received a more liberal interpretation. Bouvier's definition is, 'As soon as by reasonable exertion, confined to the object, it may be accomplished.' This seems to be the accepted legal sense of the word."

We conclude that the transcript had been deposited forthwith in the office of the circuit court clerk, within the meaning of § 2019 Pope's Digest.

In the order granting the application, the Commission reviewed the testimony, and made findings of fact thereon. Many of the witnesses—and there were 34 of them—who testified in behalf of appellee, expressed the opinion that the additional bus service which Williams proposed to·furnish was required as a matter of public convenience and necessity; while all of the 58 witnesses, residing at towns along the route Williams proposed to serve, who testified in behalf of appellants on this subject, expressed the contrary. opinion. There was also offered in evidence resolutions by various civic clubs in cities and towns along the route Williams proposed to serve, protesting the granting of the permit, upon the ground that the public convenience and interest did not require its issuance.

The Missouri Pacific Railroad Company and the Missouri Pacific Transportation Company serve only that portion of the proposed route of the Williams Bus Line extending from Newport to˙ Little Rock; while the Mathis Bus Line served a portion of the Williams' route in Mississippi, Poinsett and Craighead counties.

The Mathis Bus Line had discontinued its service, but had obtained the consent of the Commission to do so, upon the representation that on account of the condition of the highways covered by its permit it was unable to maintain service. Permission to suspend service was given by the Commission in January, and the service had not been resumed when the Mathis Bus Line filed its protest against the issuance of a permit to Williams, although it professed its willingness to do so, and its ability to resume service and to furnish such service as the Commission might direct. It appears, however, that its present equipment is in bad condition, due, as it explained, to the condition of the roads over which it operated. We do not understand that the Commission has canceled the Mathis Bus Line permit. Whether it should permit the resumption of service is a question

not presented on this appeal. What was done, as far as that Company is concerned, was to grant a permit to Williams to operate a bus line over a part of the route covered by the Mathis permit. Without further review of the testimony, we announce our conclusion to be that this portion of the Commission's order should be approved.

The circuit·court approved the Commission's order in its entirety, and under the judgment of that court the Williams ·Company would be entitled to the permit applied for; but in our opinion it should only be granted from Osceola to Newport.

This appears to be the appropriate place in this opinion to discuss the power and duty of the circuit court and of this court when reviewing such orders by the Corporation Commission.

On behalf of Williams, who, with the approval of the Commission, has assigned his permit to Arroway Coaches, Inc., it is insisted, upon the authority of the case of *Department of Public Utilities* v. *The Arkansas-Louisiana Gas Co.*, 200 Ark. 983, 142 S. W. 2d 213, that ". . . if the department's order is supported by substantial evidence, free from fraud, and not arbitrary, it is the duty of the courts to permit it to stand, even though they might disagree with the wisdom of the order. In such a case our judgment will not be substituted for that of the Department."

This quotation is from the case just cited, but that was a case in which we were reviewing an·order of the Department of Public Utilities, and not an order made by the Corporation Commission. Our duty in reviewing these orders, and our power in doing so, is not the same in one case as in the other.

The opinion in the Utilities Department case, *supra,* quotes from paragraph (d) of § 2097, Pope's Digest, the limitation upon the power of courts to review ·orders of the Department of Public Utilities, which reads as follows: "The review shall not be extended further than to determine whether the Department has regularly pursued its authority, including a determination of

whether the order or decision under review violated any right of the complainant under the Constitution of the United States or of the State of Arkansas."

Another duty and enlarged powers are conferred upon the courts in reviewing orders of the Corporation Commission. Section 2020, Pope's Digest, defines the duty of this court in appeals to this court involving orders of the Corporation Commission as follows: ". . . but the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable." In other words, the hearing here is *de novo,* which is not true in the review of orders made by the Department of Public Utilities.

When we have considered the testimony in this manner, we are impressed that no necessity exists for additional passenger service between Newport and Little Rock. One of the witnesses appearing before the Commission, a resident of Newport, testified that that city already had probably the best and most convenient transportation service of any city of its size in the State. The Missouri Pacific Railroad Company operates daily five trains each way between Little Rock and Newport. Not all of these trains stop at intermediate points, but some do. In addition, the Missouri Pacific Transportation Company operates daily three buses each way between these two cities, all of which do stop at intermediate points. There was a showing that at times all passengers could not be provided with seats; but this does not often occur. There was a showing also that the service rendered was not convenient to all persons along the route between Newport and Little Rock. In answer to this, it may be said that it would unquestionably be a convenience, and a very great one, to have afforded a bus service giving one the opportunity to leave one town for another when he pleased, just as he might do if he were traveling in his own private car. But this is not a necessity within the meaning of the law, which must be construed in its practical application to service of this kind.

At § 122 of the chapter on Motor Vehicles, 42 C. J., p. 687, it is said: "Where the proposed service for which a certificate is requested is to be rendered in a territory which is already served by another carrier, the commission must consider whether public convenience and necessity require further common carrier transportation service in that territory, and to this end must consider the adequacy of the service which is already rendered by the existing carrier, even though the service proposed to be rendered by applicant is different from that rendered by the existing carrier, with which it would come into direct competition. It must consider whether the public it is proposed to serve has or has not adequate common carrier transportation service, and whether the additional service proposed to be rendered will result in more adequate or less adequate service, since to warrant the licensing of additional public utilities for transportation purposes it must appear that the present serving facilities are inadequate and inconvenient to the traveling public, and that the proposed facilities will eliminate such inadequacy and inconvenience."

Since the introduction of motor passenger buses, the subject of their control, and that of granting permits for their operation, have engaged the attention of many courts, and is constantly receiving attention. Many of these cases are cited in the briefs; but we shall attempt no review of them. One of the leading cases on the subject, which is cited in many other cases, is that of *Chicago Railways Co.* v. *Commerce Commission*, 336 Ill. 51, 167 N. E. 840. There is an extended annotator's note to this case appearing in 67 A. L. R. 957, where many cases from many states are cited. These are summarized by the annotator in what he calls the general rule to the following effect: "The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required."

The subject is extensively treated in Pond on the law of Public Utilities. In this late work the author says, at § 775, vol. III, that "The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates."

In our opinion, the showing was not made that the public convenience and necessity required additional passenger service between Newport and Little Rock. The Commission made the following finding: "It is conceded and shown by the testimony that both the Missouri Pacific Railroad Company and the Missouri Pacific Transportation Company are able and fitted financially and otherwise to provide ample and sufficient transportation facilities. It is shown by the testimony that the Missouri Pacific Transportation Company has additional passenger vehicles that can be brought into service if the occasion should require, and that they are financially able to provide additional transportation facilities to meet the public needs."

The judgment of the circuit court will be reversed, and the cause remanded to that court, with directions to so modify the order of the Corporation Commission as to deny the application for a permit to operate an additional bus line between Newport and Little Rock.