POTASHNICK TRUCK SERVICE, INC., *v.* MISSOURI & ARKANSAS TRANSPORTATION COMPANY.

4-6555                                          157 S. W. 2d 512

Opinion delivered January 12, 1942.

*John S. Mosby,* for appellant.

*A. F. House* and *W. S. Walker,* for appellee.

SMITH, J.   The Missouri & Arkansas Transportation Company, a subsidiary of the Missouri & Arkansas Railway Company, applied to the Corporation Commission of

this state for a Certificate of Convenience and Necessity to operate truck lines over the following routes in this state.

1. Gateway to Harrison, via U. S. highways 62 and 65, serving all intermediate points.

2. Harrison to Clinton, via U. S. highway 65, serving all intermediate points.

3. Clinton to Kensett, via State highway 16, serving all intermediate points.

4. Clinton to Little Rock, via U. S. highway 65, serving no intermediate points.

5. Wooster to Heber, via State highways 25 and 16, serving no intermediate points between Wooster and Quitman, and all intermediate points between Quitman and Heber.

6. Searcy to Little Rock, via U. S. highway 67, serving no intermediate points.

At the hearing before the commission the Missouri Pacific Railroad Company, the Chicago, Rock Island & Pacific Railway Company, and Motor Express, Inc., appeared and protested the granting of any authority to operate between Searcy and Little Rock, this being proposed route No. 6. After hearing testimony as to the need of further service between those cities, the commission held that the application, so far as it related to route 6, should be denied, whereupon the three protestants above-named withdrew from the proceeding.

The other protestants were: Potashnick Truck Service, Fred W. Jones Truck Line, Powell Brothers Truck Line, Film Transit, Inc., Jones Truck Line, Derickson Truck Line, and Heber Springs Truck Line. They were heard, and they presented their objections to the granting of the permit. During the hearing, the Derickson Truck Line withdrew its protest. After the conclusion of the testimony, which began on April 17, 1940, the petition was submitted on briefs, and on November 16, 1940, an order was entered by the commission granting authority to operate over routes 1 to 5, inclusive. On December 4,

1940, the remaining protestants perfected an appeal to the Pulaski circuit court, where, after additional briefs had been filed, the court, on June 9, 1941, affirmed the order of the commission. In the meantime the Jones Truck Line, one of the original protestants, filed a disclaimer, saying it did not care to appeal from the order of the commission and later ·Carl Matthews, doing business as Heber Springs Truck Line, withdrew from the proceeding, after stating that he had ceased his operations as a motor carrier. All the other protestants have prosecuted and are prosecuting this appeal from the judgment of the circuit court affirming the order of the commission.

We said in the· case of *Missouri Pacific Railroad Co.* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644, that the statute under which this proceeding was had required this court, upon the appeal to it, to hear the matter *de novo,* and to render such judgment upon the appeal as appeared to be warranted and required by the testimony. And so we do, but we cannot· ignore the fact appearing in the record before us that a protracted hearing was had, both before the commission and in the circuit court on appeal, and, while the burden was upon petitioner to make the affirmative showing that the public convenience and necessity required the issuance of the permit, that finding has been made, and should now be affirmed unless it appears to be contrary to a preponderance of the testimony. We hear chancery appeals *de novo,* but, when we have done so, we affirm the findings of the chancellor on questions of fact unless his findings appear to be contrary to a preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160.

The protestants produced nine witnesses, two of whom appeared in opposition to granting a permit covering the route from Little Rock to Searcy; but the commission denied that part of the application, from which action the petitioner prayed no appeal. Of the remaining seven witnesses all but two were owners or employees of the opposing truck lines. The testimony of a much larger number of witnesses was to the effect that the public con-

venience and necessity required the issuance of the permit prayed for.

Opposing counsel, in their briefs, cite numerous cases from other jurisdictions defining the term "Public convenience and necessity," as employed in similar statutes of other states; but our own case of *Missouri Pacific Railroad Co.* v. *Williams, supra,* sufficiently announces the rule to follow in determining that question.

Pending the hearing the permit for the route operated by Derickson was transferred by him to petitioner. The Derickson permit covered routes 1, 2 and 4, for which petitioner prayed a permit. This transfer was approved by the corporation commission, and protestants appealed from that order. The appeals were consolidated and tried together.

It is insisted that the transfer of the Derickson permit is void, as not being authorized by law. We find it unnecessary to decide that question, for the reason that petitioner's permit covers the routes over which Derickson operated, and if petitioner may not operate under Derickson's permit, it may operate under its own. Derickson has sold his equipment, along with his permit and has ceased to operate his truck line, and whether there was authority to transfer the permit, which question we do not decide, the cessation of operations by Derickson appears to be a reason for the grant of a permit to continue a service which Derickson has abandoned.

Many witnesses, including county and municipal officials, testified in support of petitioner's application, and gave various reasons why it should be granted among others these. Various merchants on different routes testified that they had inadequate truck service to Little Rock, and, in some cases, none at all, and they were compelled to make purchases in Kansas City and St. Louis which would preferably have been made in Little Rock, and other witnesses testified that petitioner proposed to give one-day service as opposed to the present overnight service where service was afforded at all. The carriers now operating maintain no depots, have no freight agents,

and furnish no storage facilities, while petitioner proposed to furnish all these at numerous places. The service now furnished was referred to by several witnesses as a "Flag them down" service.

The mayor of the city of Searcy, which is one of the largest cities petitioner proposes to serve, testified that the Potashnick Truck Service, which serves that city, "was hard to find when needed." This witness also testified that so far as he knew there was no regular truck line service from Kensett, through Searcy and Heber Springs and Shirley into Clinton.

A merchant in Shirley, a town of about 500 people, testified that his town had no truck service of any kind, and petitioner proposed to furnish service to that locality. It was shown also that there was no truck line service between Searcy and Clinton, each being a county seat town, and petitioner proposed to furnish service between those towns.

Other witnesses testified as to benefits their towns would enjoy if the permits were granted to petitioner.

Section 2025, Pope's Digest, prescribes the procedure for obtaining a permit and the showing to be made for that purpose. Subdivision (c) of that section reads as follows: "A public hearing shall be held by the commission upon said application at the date so designated, unless for good reason a continuance be granted. In granting applications for certificate, the commission shall take into consideration the length of time the applicant has operated a scheduled motor vehicle service between the termini named in the application; the general standard of the service maintained during such period; the reliability of the applicant and his sense of responsibility toward the public as shown during the period of such operation; the transportation service being maintained by any railroad, street railway or motor carrier; the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which such proposed transportation service may have upon other forms of transportation service; and any other matters tending to show the neces-

sity or want of necessity for granting said application. After such hearing the commission may issue the license certificate or refuse the same, or may issue the same with modifications, and upon such terms and conditions as in its judgment the public convenience and necessity may require. No license shall be issued to any person, firm, corporation or association or to associated interests for a total mileage in excess of an aggregate twenty per cent of the total mileage within the state highway system, nor shall any such license, in any event, be exclusive.''

The law does not grant a monopoly, nor does it intend to permit competition not required by the public convenience and necessity. These are questions of fact which the commission has the authority to investigate and determine, subject to the review by the courts to which appeals may be taken.

The commission has acted after prolonged and painstaking investigation, and we do not find that it has acted arbitrarily, or that its action exceeds the public convenience and necessity, which should control its action.

The judgment of the circuit court, affirming the action of the commission, is, therefore, affirmed.