SOUTHEAST ARKANSAS FREIGHT LINES, INC., *v.*
ARKANSAS CORPORATION COMMISSION

4-6885                                    166 S. W. 2d 262

Opinion delivered December 7, 1942.

*John S. Mosby,* for appellant.

*T. E. Wood, Jack Holt,* Attorney General, and *Clyde E. Pettit,* Assistant Attorney General, for appellee.

HOLT, J. This is an appeal by six motor carriers from a judgment of the Pulaski county circuit court affirming an order of the Arkansas Corporation Commission fixing, prescribing and publishing certain rates applicable to truckload movements by common motor carrier truck lines, of specific commodities, over irregular routes, in Arkansas, intrastate, and from the additional order of the Circuit Court.

The order of the Commission, which was made November 22, 1941, included this finding: "No evidence of probative value was introduced in the record by carrier witnesses upon which this Commission could conclude that operating conditions applicable to motor carriers in Arkansas differ with those applicable to similar carriers in Missouri . . ." and that the Commission "concludes upon the record that it is justified in ordering effective for application on intrastate traffic between points in Arkansas via all motor common carriers the scale of class rates prescribed by the Missouri Public Service Commission in its Case No. 8397 decided March 5, 1935, including supplemental orders therein, effective as on the date hereof, the Missouri rates referred to being those in effect on the date hereof," with an order in accordance therewith, and providing further that the order shall remain in effect for a test period of six months from December 1, 1941, during which period the motor common carriers herein involved shall keep complete records specifically applicable to the traffic referred to, and submit reports to the Commission at the end of each month after the effective date of the rates.

On appeal the Circuit Court affirmed the order of the Commission and in addition adjudged that "This order shall remain in effect for a test period of six months from May 1, 1942, during which period the motor common carriers herein involved shall keep complete records specifically applicable to the traffic herein referred to, such records to include commodities, weight, origin, destination, and revenue, and the costs allocated specifically to the character of traffic involved; these records to be kept in such form as may be submitted to the Commis-

sion in appropriate report as early as possible after the end of each month after the effective date of the rates."

Appellants' assignments for reversal here may be summed up as follows: (1) they contend that the Corporation Commission was without power on its own motion to initiate and prescribe the rates in question here, applicable to truckload movements by common carrier truck lines, and in any event it could not establish these rates without at the same time establishing minimum rates for contract carriers; and (2) that the Commission's order fixing the rates was arbitrary and without sufficient evidence to support it, is invalid, and that the judgment of the Circuit Court should be reversed.

It is conceded that the rates in question here affect only truckload movements over common carrier truck lines in Arkansas; that the Commission made no order affecting contract carriers when the present order was made, and that there was no order in effect at the time in general affecting truckload movements of common carrier truck lines.

1.

We proceed now to the consideration of appellant's first assignment.

Since the adoption of the Constitution of 1874, it has clearly been the State's policy to regulate transportation agencies. Section 1 of art. 17 provides that "all railroads, canals and turnpikes shall be public highways" and § 3 provides: "all individuals, associations, and corporations shall have equal right to have persons and property transported over railroads, canals, and turnpikes, and no undue, or unreasonable discrimination shall be made in charges for, or in facilities for transportation of freight." Amendment No. 2 to the constitution, adopted January 13, 1899, provides: "The General Assembly shall pass laws to correct abuses and prevent unjust discrimination and excessive charges by railroads, canals and turnpike companies for transporting freight and passengers, and shall provide for enforcing such laws by adequate penalties and forfeitures, and

shall provide for the creation of such authority as shall be necessary to carry into effect the powers hereby conferred."

Following these constitutional mandates, the Legislature of 1921 passed Act 124, § 6 of which (Pope's Dig., § 2005), provides: "The Commission (now Corporation Commission) shall have the power, after reasonable notice, and after full and complete hearing, to enforce, originate, and establish, modify, change, adjust and promulgate tariffs, rates, joint rates, tolls and schedules, for all public service corporations, companies, and utilities, and all rules and regulations with reference thereto, and orders directing the performance of any duties devolving on said company, utility, common carrier, or public service corporation under the terms of this Act."

The General Assembly of 1929 enacted Act 62, called the "Motor Vehicle Act," and § 4 thereof (§ 2026, Pope's Digest) contains this provision: "The Commission (now Corporation Commission) is hereby vested with power and authority to supervise and regulate every motor vehicle carrier doing business in the state to fix or approve the rates, fares, charges, also classification, rules and regulations for every motor vehicle carrier."

The Legislature of 1941 pased Act 367, § 17, par. (a) of which provides: "Whenever an applicable tariff has not already been prescribed by the Commission, every common carrier by motor vehicle shall file with the Commission, etc." and paragraph (d) of this same section provides: "No common carrier by motor vehicle, unless otherwise provided by this Act, shall engage in the transportation of passengers or property, unless the rates, fares, and charges upon which the same are transported by said carrier have been prescribed, or filed and published in accordance with the provisions of this Act."

The above legislative enactments were in full force and effect when the Commission's order in question here was made. We find nothing in Act 367 of 1941 in conflict with previous enactments, *supra,* of the Legislature which we think clearly authorized the Corporation Com-

mission to originate, establish and promulgate the rates in question here. Act 367 must be construed as cumulative of the provisions of former acts when the act contains no specific repealing clause. We think it was the clear intention of the lawmakers in the progress of its legislative enactments to give to the Corporation Commission just such power as it has exercised here, and that the Commission has such power. To hold otherwise, it seems to us, would materially tie the hands of the Commission and seriously affect its usefulness.

Appellant's contention that the Commission was required to establish minimum rates affecting contract carriers at the same time it fixed, established and put into effect the rates affecting truckload movements by common carrier truck lines is untenable for the reason that we find nothing in Act 367 of 1941 or any other legislation on the subject requiring it to do so. While it might have done so, it was not required to do so.

## 2.

Was the order of the Corporation Commission arbitrary and without evidence to support it? We do not think it was. The record before us reflects that on May 21, 1941, the Arkansas Corporation Commission on its own initiative gave notice for hearing "In Re: Rates of Common Carriers of Specific Commodities over Irregular Routes" and stated it would consider the propriety of requiring all carriers of specific commodities over irregular routes to file a uniform tariff. The hearing was to be had June 6, 1941. At the hearing on June 6 the matter was continued to July 8, 1941. Under date of June 17, 1941, the Commission issued an additional notice broadening the scope of the case and styling it "In Re: Rates of Common Carriers of Special Commodities over Irregular Routes and Establishment of Truck Load Rates for all Common Carriers by Motor Vehicle." The notice states that the question and propriety of the Commission establishing and publishing truck load rates to apply to all commodities in Arkansas by motor carrier vehicles would be considered at a

hearing July 8. There was also this statement in the notice: "By reason of the fact that common carriers by motor of property in Arkansas do not file annual reports, the Commission is unable to ascertain at this time the cost of service as a whole and inasmuch as it appears that the Public Service Commission of the State of Missouri has conducted a very intensive investigation as to cost of operation of motor carriers of property in Missouri, and the Arkansas Corporation Commission concluding that the cost in Missouri closely approximates the cost of service in Arkansas, and realizing that rates should be based upon the cost of service, plus an amount to take care of taxes and return on investment in property used and useful in performing the service, concludes that the formula adopted by the Public Service Commission of the State of Missouri, for the prescription of truck load rates in that state, should be used as a guide in prescribing truck load rates in this state, now gives notice that this method of prescribing truck load rates for common carriers of property by motor vehicle in Arkansas will be considered at the hearing now set for Tuesday, July 8, 1941."

June 20 the Commission gave notice of a continuance of the hearing until July 21, 1941, and in this notice it informed all motor carriers of its intention to consider for adoption the formula adopted by the Public Service Commission of the State of Missouri for the construction of truck load rates on all commodities, and called upon all interested parties to submit exhibits and data as to the level of the rates to be fixed on any exempted commodities. At this hearing, for the convenience of all interested parties, the Commission distributed in the form of an exhibit "the reflection of what the rates are in Missouri when the formula is applied."

At this hearing a joint committee composed of J. C. Murray, C. C. Delms, T. E. Wood and Homer J. Conley for the shippers, and A. E. O'Hara, Jack Otterson, Loren Pendergraft, J. M. Williams, Robert Black and Roscoe Staggs for the truckers was appointed for the purpose of studying the matter of the rates under consideration

and to report back to the Commission. Subsequently, the committee, which was composed of men of high standing and wide information on the rate question involved, adopted and presented to the Commission the following resolution: "Resolved, that truckload rates should be made available on all commodities (subject to exceptions) for intrastate application via common carrier truck lines on Arkansas intrastate traffic. Resolved further: That the Commission be respectfully requested to re-assign this case to a date not earlier than November 1, 1941, at which time it will receive evidence upon which to reach conclusions upon the matter outlined in its notice of June 17, 1941, in these proceedings. Resolved further: That as a result of such hearing the Commission prescribe truckload rates on intrastate truckload traffic generally, except upon such commodities which in its opinion should be exempted."

Pursuant to this resolution the Commission gave notice to all interested parties that the matter would be continued to November 3, 1941, and that at that time the Commission would consider the propriety of ordering a scale of truck load rates to apply intrastate in Arkansas to all motor common carriers, whether said carriers held certificates to transport specific commodities over irregular routes, or all commodities over regular routes. The notice further stated that in the opinion of the Commission truck load rates should be made available on all commodities for intrastate application via common carrier truck lines in Arkansas.

The Commission also again suggested the adoption of the scale of rates promulgated by the Missouri Public Service Commission previously set out in the June 17 notice, and gave notice that all interested parties might present to the Commission evidence and argument for or against the proposed rates, and that the proceeding was continued for the purpose of giving all interested parties further opportunity to present evidence and argument as to the level of the truck load rates and the formula to be adopted in prescribing said rates to apply to motor carrier movements in truck load quantities in the State of Arkansas.

At the final hearing on November 3, appellants offered one witness. We think it unnecessary to attempt to abstract the testimony of this witness. It suffices to say, after carefully reviewing it, that we think the Commission and the Circuit Court on appeal were justified in finding that its effect falls far short of showing that the rates fixed and established by the Commission were not just, reasonable and non-discriminatory as affecting appellants, carriers by motor vehicle in truck load quantities. The Circuit Court on appeal heard the cause *do novo*, on the record presented (§ 2019, Pope's Digest) before the Commission, and we can not say that its action in affirming the order of the Commission is against the preponderance of the testimony.

It must be borne in mind that the public interest is the primary consideration of the Commission in fixing and establishing just, reasonable and non-discriminatory rates. In fixing these rates, great latitude must be accorded the Commission, and as was said by the court in *Texas & N. O. R. Co.* v. *United States,* 10 Fed. Supp. 198: "A court must at the outset indulge the recognized presumption of the law, that public officers will not only do their duty, but that they will perform such duty faithfully. This presumption must be indulged in the absence of proof to the contrary."

In the instant case there was before the Commission, and the court on appeal, the Missouri rates in effect in that state at the time the Commission made the order. The Missouri rates, though originating in 1935, had been adjusted and revised to suit 1941 conditions in that state. There was also before the Commission the resolution of the joint committee, *supra,* composed of men with wide experience and broad knowledge in establishing rates such as we have here, and it appears that this committee, after a thorough investigation, recommended to the Commission "that truck load rates should be made available on all commodities (subject to exceptions) for intrastate application via common carrier truck lines in Arkansas for intrastate traffic." It appears that the members of this committee were present at the final hearing, but were not questioned by appellants.

There was also before the Commission the annual report of each of the appellants filed with the Commission in 1941, covering 1940 activities. There was also evidence before the Commission as to truck load revenues by motors at the rates and minimum rates published; a comparison of revenue by car load by rails with the per truck load revenue by motors; earnings by motors at the rates and minimum weights published, a comparison of per car mile earnings and per ton mile earnings, the rail with the per truck mile earnings and per ton mile earnings by motors.

It is apparent from the record presented that the Commission extended to appellants the opportunity to gather and introduce evidence and exhibited a spirit of fairness and thorough cooperation to the end that just, reasonable and non-confiscatory rates might be established. A period of more than six months had elapsed, from the initial notice, till the final hearing, and in the Commission's order, it will be noted that the rates established were to continue over a trial period of six months, at the end of which time the opportunity would be afforded for readjustments. So, on the whole, we think there was ample evidence before the Commission, on which to base its findings and order.

The principles announced in the recent case of *Potashnick Truck Service, Inc.,* v. *Missouri & Arkansas Transportation Company,* 203 Ark. 506, 157 S. W. 2d 512, apply here. In that case this court said: "We said in the case of *Missouri Pacific Railroad Company* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644, that the statute under which this proceeding was had required this court upon appeal to it, to hear the matter *de novo,* and to render such judgment upon the appeal as appeared to be warranted, and required by the testimony. And so we do, but we cannot ignore the fact appearing in the record before us that a protracted hearing was held, both before the Commission and in the circuit court on appeal, and while the burden was upon petitioner to make the affirmative showing that the public convenience and necessity required the issuance of the permit, that find-

1032

ing has been made, and should now be affirmed unless it appears to be contrary to a preponderance of the testimony. We hear chancery appeals *de novo*, but when we have done so, we affirm the findings of the chancellor on questions of fact unless his findings appear to be contrary to a preponderance of the evidence."

As has been noted, the Circuit Court on appeal by its judgment affirmed the Commission's order in every respect except that it continued the trial, or experimental period, during which the rates were to be in effect, for a period of six months beyond May 1, 1942. We think this action of the court clearly within its discretion and was proper in the circumstances here.

Finding no error, the judgment is affirmed.