ARKANSAS MOTOR FREIGHT LINES, INC., *v.*
BATESVILLE TRUCK LINE, INC.

4-8730 216 S. W. 2d 857

Opinion delivered January 24, 1949.

*Louis Tarlowski,* for appellant.

*Willis V. Lewis* and *Barber, Henry & Thurman,* for appellee.

Ed. F. McFaddin, Justice. This appeal stems from an application made to the Arkansas Public Service Commission by Batesville Truck Lines, Inc. (hereinafter called appellee) for a certificate of public convenience and necessity as a common carrier of general commodities from Little Rock to Batesville, and return. The Commission refused the application; the Circuit Court reversed the decision of the Commission; and the case is here on appeal from the Circuit Court judgment. Appellee proposed to operate with "closed doors"[1] from Little Rock to Batesville via U. S. Highway 67 to Bald Knob and State Highway 11 from Bald Knob to Batesville; the return trip was to be over the same route, but with "open doors."[1]

The Missouri Pacific Railway Company resisted appellee's application before the Commission, but is not a party to the present appeal. It was shown that the Missouri Pacific Railway Company and its affiliate, Columbia Motor Transport Company, operate from Little Rock to Batesville, but not door-to-door service with approximately 12 hours delivery as is proposed by the applicant here. Arkansas Motor Freight Lines (hereinafter called appellant) is the only carrier from Little Rock to Batesville and from Batesville to Little Rock that is authorized to render such service as is proposed

---

[1] As explained in *Santee* v. *Brady,* 209 Ark. 224, 189 S. W. 2d 907 "closed doors" (in this case) means that no shipments are to be received at intermediate points on the trip from Little Rock to Batesville; and "open doors" (in this case) means that shipments are to be received at intermediate points on the trip from Batesville to Little Rock.

by the appellee—*i. e.,*: call at the place of business of the shipper for the package either in Little Rock or Batesville, and deliver the package to the address of the consignee, with such service to be on an overnight or one-day schedule. Appellant resisted appellee's application before the Commission, and still continues such resistance. Because appellant had a certificate of public convenience and necessity to render the same service as that proposed by appellee, the testimony in the main was directed to whether the appellant's service was adequate, and whether additional service is needed.

By a vote of two to one, the Public Service Commission refused to issue the permit. Commissioner McCulloch wrote the opinion, denying the permit, and assigned as the reasons for such denial: (a) that the present service is reasonably adequate; (b) that the proposed additional service is not needed; and (c) that the existing carrier (appellant here) is willing and able to furnish any required additional service. Commissioner Wine concurred in denying the permit, but for unexpressed reasons, being other than those stated in the opinion of Commissioner McCulloch. Dissenting from Commissioner McCulloch's opinion was Commissioner Westfall, who had presided at the hearing at which the witnesses testified, and who held: (a) that the present service is inadequate; (b) that the proposed service is needed; and (c) that the present carrier had failed to furnish the proper service. On appeal, the Circuit Court reversed the majority of the Commission, and took the minority view, ordering the permit issued. The matter is here on appeal from this order.

In *Santee* v. *Brady,* 209 Ark. 224, 189 S. W. 2d 907 we used the following language, which is also applicable and governing in the case at bar: "The law governing such a case as this one has been fairly well charted, as is shown by the following cases: *Mo. Pac. R. Co.* v. *Williams,* 201 Ark. 895, 149 S. W. 2d 644; *Potashnick Truck Service, Inc.* v. *Missouri & Arkansas Transportation Co.,* 203 Ark. 506, 157 S. W. 2d 512; *Taylor* v. *Black Motor Lines,* 204 Ark. 1, 160 S. W.

2d 859; *Potashnick Local Truck System, Inc.* v. *Fikes,*
205 Ark. 924, 165 S. W. 2d 615; *Mo. Pac. Transportation
Co.* v. *Gray,* 205 Ark. 62, 167 S. W. 2d 636. From these
cases we mention a few guiding principles:

"A. This court tries this case *de novo,* and renders
such judgment as appears to be warranted and required
by the testimony. Such is the provision in section 2020,
Pope's Digest, and the holding in *Mo. Pac. Rd. Co.* v.
*Williams,* and also in *Potashnick Truck Service* v. *Mo.
& Ark. Transportation Co.*

"B. 'The general rule is that a certificate may not
be granted where there is existing service in operation
over the route applied for, unless the service is inade-
quate, or additional service would benefit the general pub-
lic, or unless the existing carrier has been given an op-
portunity to furnish such additional service as may be
required.' Such is the rule stated in *Mo. Pac. R. Co.* v.
*Williams,* and followed in the later cases, and restated
in *Potashnick Local Truck Service* v. *Fikes.*"

We proceed now to state and measure the evidence
in the case at bar by the judicial yardsticks stated in
*Santee* v. *Brady, supra,*[2] as well as in our later cases.[3]
It was shown that in shipping from Batesville to points
intermediate to Little Rock, such as Bald Knob and
Searcy, for example, the appellant would carry the ship-
ment from Batesville through the intermediate point
direct to Little Rock, and then later have some other
carrier return the shipment to the intermediate point,

---

[2] In *Santee* v. *Brady, supra,* we said: "The Act in effect at the
time of the hearing before the Arkansas Corporation Commission was
Act 367 of the General Assembly of 1941. 1945 legislation concern-
ing the Arkansas Corporation Commission is not involved in this
opinion." The "1945 legislation" referred to in the above quotation
is Act 40 of 1945, which was, by its caption, "An Act to Consolidate
the Corporation Commission and the Department of Public Utilities,
to . . . be known as the Arkansas Public Service Commission. This
1945 legislation effected no change of the extent of judicial review
as stated in Act 367 of 1941, which is the "Arkansas Motor Carrier
Act."

[3] See *Camden Transit Co.* v. *Owen,* 209 Ark. 861, 192 S. W. 2d
757; *Schulte* v. *Southern Bus Lines,* 211 Ark. 200, 199 S. W. 2d 742;
and *Arkansas Express Inc.* v. *Columbia Motor Transport Co.,* 212
Ark. 1, 205 S. W. 2d 716. In Vol. 2, page 67 of the Arkansas Law
Review there is a Comment entitled "Judicial Review of Findings of
Arkansas Public Service Commission"

all of which caused considerable delay. This practice accounted for the appellee's (applicant's) proposed "open-door" policy on the trip from Batesville to Little Rock. Fourteen witnesses representing various shippers in Batesville testified to the inadequacy of the present service of the appellant, and the need for the appellee's proposed service. We are impressed by this testimony; some of these witnesses gave concrete examples of such inadequacies:

(a) The witness Arch Jones was engaged in the building business in Batesville, and—due to appellant's inadequate service in transporting shipments from Little Rock to Batesville—the witness lost over $250 because of unreasonable delay.

(b) The witness Jay McCall is with the Padgett Lumber Company. He ordered 40 feet of lumber from Searcy, and the remonstrant was six days delivering the shipment to him in Batesville.

(c) Alvis H. Shoemaker operates a plumbing and electrical shop in Batesville employing 17 men and operating four trucks, and has need of carrier delivery every day from Little Rock to Batesville. He testified that a shipment sent over appellant's line sustained a delay of four days, and was, even then, not delivered.

(d) Keith Sims is engaged in the wholesale grocery business in Batesville. He testified that the appellant's service was so inadequate that the witness was obliged to use his own grocery truck to transport merchandise from Little Rock to Batesville.

(e) The witness O. E. Jones is in the newspaper and printing business in Batesville; and he summarized the entire situation in this language:

"Q. Will you tell what you know as to the needs? A. Well, it is a matter of general observation. First of all, Batesville has grown from a town of about 4,000 to a present estimated 7,500 and— Q. Over what period? A. Over a period of about 7 or 8 years. And the sewer engineers who made the survey estimate Batesville would be 10,000 or more within five years. We haven't any

better or more extensive freight handling out of there now than we did as a town of 4,000. We need another line very badly.

. . . . . . . . .

"Q. You feel that the present service you have by motor and rail service is inadequate. A. It is thoroughly inadequate. Q. You feel that one operator could better serve to take care of the needs of the public, one operator alone? A. No, sir, I do not, even though he increased his facilities more, of which I am doubtful, he could not be able to handle it. Q. You feel that such an operation as Mr. Tugwell, as president of the Batesville Truck Line, is needed by your community? A. Yes, sir. I am familiar with Mr. Tugwell's operation over a long period of time and he is by far the best and most efficient freight man we have ever had and I am anxious to see he has a chance to do it. Q. Is your prime interest in Mr. Tugwell or the needs of the community? A. To the community. I know and respect Mr. Tugwell, but I have no personal motive at all."

There were many other witnesses from Batesville whose testimony was along the same substantial lines. Opposed to these 14 witnesses from Batesville, there was only one witness from Batesville who testified that the appellant's service was adequate. There were witnesses who represented Little Rock establishments, and who testified that the appellant's service was satisfactory so far as Little Rock shippers were concerned; but most of these witnesses for appellant finally admitted that they had never checked to see when the shipments from Little Rock reached their destination in Batesville. Appellant's witnesses only knew when the shipments were picked up in Little Rock.

Without lengthening the opinion by further reviewing of the evidence, we reach the conclusions that the present service is inadequate; that the service proposed by the Batesville Truck Line, Inc., is needed; and that a certificate of public convenience and necessity should be granted. We therefore affirm the judgment of Circuit Court, which directed that the Public Service Com-

454

mission take action in conformity with the Circuit Court order.