NATIONAL TRAILER CONVOY, INC. ET AL ·*v.* TRANSIT HOMES, INC.

73-26                                   494 S.W. 2d 446

Opinion delivered May 21, 1973

*Louis Tarlowski* and *Roy Finch Jr.,* for appellants.

*Howell, Price, Howell & Barron,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee, Transit Homes, Inc., of Greenville, S.C., applied to the Arkansas Transportation Commission for a certificate of convenience and necessity authorizing it, as a common carrier, to transport mobile homes by motor vehicle in intrastate commerce in Arkansas. The application was opposed by the three appellants, National Trailer Convoy, Arkansas Transit Homes, and Chandler Trailer

Convoy, which are now engaged in that business. After an extensive hearing the Commission ordered that the requested certificate be issued. The Commission's decision was affirmed by the circuit court. The question here is whether the Commission's order is contrary to the proponderance of the evidence. We have concluded that it is.

Transit Homes, the appellee, is a substantial concern doing an interstate business throughout almost the entire United States and an intrastate business in most of the states. Its financial ability to expand its operations to include intrastate movements in Arkansas is not questioned. Rather, the narrow issue before us is whether Transit Homes met its burden of proving that the service being rendered by the three appellants is so inadequate that the public convenience and necessity require that another common carrier be permitted to enter the field.

Transit Homes, in building its case, relied primarily upon the testimony of seven witnesses, six of them being employees of mobile-home manufacturers and the seventh being a retail dealer in such homes. All except one of the concerns in question owned or leased their own trucks and used them to transport the great majority of their mobile home units. The various companies called upon the common carriers only when they were unable to move their units with their own equipment.

Three of the witnesses, Brewer, Nance, and Palmer, complained of a condition for which the three protesting carriers cannot fairly be said to be responsible. According to those witnesses, their employers withhold certain bonuses if mobile home units that have been sold during each month are still on the company's premises at the end of the month. Thus there is an extensive, but somewhat artificial, demand for service at the end of every month. For instance, Nance complained that at the end of one month he called for 24 trucks, upon 24 to 36 hours notice, but he was able to obtain only 8. Nance had no comparable demand for common carrier service during the rest of the month. Obviously the appellants cannot be expected to maintain a fleet of trucks sufficent-

ly large to accommodate such once-a-month demands. Moreover, it would appear that the complaining companies might alleviate their own problems by changing their accounting systems so that they would not all demand extra service on the same day of each month.

On direct examination the various witnesses supporting the application testified that additional carrier services were needed. That view, of course, was to their own pecuniary interest, since, as some of them admitted, an additional carrier in the field would give them a correspondingly better chance of finding a truck just when they needed it. In considering a somewhat similar argument with respect to the need for added passenger bus schedules we have said: "There was a showing also that the service rendered was not convenient to all persons along the route between Newport and Little Rock. In answer to this, it may be said that it would unquestionably be a convenience, and a very great one, to have afforded a bus service giving one the opportunity to leave one town for another when he pleased, just as he might do if he were traveling in his own private car. But this is not a necessity within the meaning of the law, which must be construed in its practical application to service of this kind." *Missouri Pac. R.R.* v. *Williams,* 201 Ark. 895, 148 S.W. 2d 644 (1941).

On cross examination, however, the witnesses were for the most part unable to state *facts* calling for the licensing of another common carrier in the field. The witness Palmer, for example, in effect admitted that his company had no extensive need for common carrier service. He could remember having made only two or three calls for service in four months. Another witness, Richardson, was not his company's dispatcher and did not know whether one of the appellants, National Trailer Convoy, had been called for service after having been given two days notice. The dealer, Molder, who sells 200 mobile homes a month, had called National for service only twice in 1971, and both calls were in an emergency situation when his own equipment had suffered a breakdown on the highway. The witness Robinson had no present need for common carrier service but speculated about what his needs would be in 60 days, when a leas-

ed truck would no longer be available to him. The witness Brewer conceded on cross examination that a month before the hearing he had acquired three new trucks and had had no subsequent need for common carrier service.

On the other hand, the protesting carriers offered proof of their ability to provide satisfactory services, of their willingness to meet any additional needs that night arise, and of the extent to which their trucks were frequently idle, for want of sufficient business to keep them occupied. We have carefully studied the record and have concluded that the applicant did not establish by a preponderance of the evidence that public necessity requires the issuance of the requested certificate.

Reversed.