OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1900.

AND IN THE FIFTY-FOURTH YEAR OF THE STATE.

---

STATE OF IOWA, Appellant, v. C. F. SANTEE.

**Constitutional Law:** PETROLEUM PRODUCTS: *Special privileges.* Code, Section 2508, prohibits the use of petroleum products for illumination which emit a combustible vapor at a lower temperature than 105 degrees Fahrenheit, closed test, except when used in the Welsbach hydrocarbon incandescent lamp. *Held,* that since there were other lamps equally safe, operated on the same principle, and securing the same results as the Welsbach lamp, the exception contained in such section was unconstitutional, as a violation of Constitution, Article 1, section 6, prohibiting the general assembly from granting to any citizen or class of citizens privileges or immunities which shall not equally belong to all citizens on the same terms.

ABRIDGMENT OF PRIVILEGE OR IMMUNITY. Such provision is also in violation of U. S. Constitution, Article Amendment 14, section

VOL. 111 Ia—1

|111 1|
|123 674|

(1)

1, forbidding a state to pass a law abridging the privileges or immunities of citizens, or denying to its citizens equal protection of the law.

STATUTE VOID IN PART. Code, section 2508, prohibits the use of petroleum products for illuminating purposes which emit a combustible vapor at a lower temperature than 105 degrees Fahrenheit, closed test, except when the gas or vapor is generated outside the building to be lighted, but provides that such provision shall not apply to such petroleum products used in the Welsbach hydrocarbon incandescent lamps. *Held*, that though such special exception was unconstitutional and void, as a special privilege, its invalidity did not invalidate the whole act, since such exception was not necessary to the completeness of the general prohibition of the statute.

CONSTRUCTION. Though an interpretation which will render a statute not obnoxious to the Constitution will be adopted if possible, this rule of construction does not warrant the forcing on the language of an act a meaning which upon a fair test is repugnant to its terms, nor taking from or adding to the plainly expressed language of the legislature.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

THURSDAY, APRIL 12, 1900.

AN information was filed against defendant for using gasoline in illuminating a building, without the use of the Welsbach hydrocarbon incandescent lamp or lamps. The case was tried to a jury in the district court, on appeal, upon a stipulation of facts, resulting in a directed verdict of not guilty, and the state appeals.— *Reversed.*

*Milton Remley* Attorney General for the state.

*Thos. F. Stevenson* and *Cummins, Hewitt & Wright* for appellee.

DEEMER, J.—The material part of the statute under which defendant was prosecuted reads as follows: "If any

person sell or offer for sale or use any product of petroleum for illuminating purposes which will emit a combustible vapor at a temperature of not less than one hundred and five degrees standard—Fahrenheit thermometer, closed test, except that the gas or vapor thereof shall be generated in closed reservoirs outside the building to be lighted thereby, and except the lighter products of petroleum when used in the Welsbach hydrocarbon incandescent lamp, he shall be punished," etc. Code, section 2508. It is agreed that the defendant used gasoline of a quality that would emit a combustible, vapor at temperature of less than one hundred and five degrees for illuminating purposes, that the vapor was not generated in closed reservoirs outside the building, and that he did not use it in Welsbach hydrocarbon incandescent burners. It is further agreed that the lamp used by the defendant was constructed on the same principle as the Welsbach, though not manufactured by the same company, and that it was constructed substantially as the Welsbach; that results were reached in substantially the same way, and by the same means; and that the lamps were the mechanical equivalent of each other. The attorney general contends that the exception or proviso found in the statute as to the character of lamp to be used in the use of the lighter products of petroleum means that the lamp must be the identical one therein referred to, and that defendant is guilty, on the admitted facts. He further contends that even if the proviso be found to be unconstitutional, as creating a monopoly, still the defendant is guilty, under the conceded facts, for the reason that, if the proviso be eliminated, then defendant had no right to use gasoline for illuminating purposes unless the vapor is generated outside the building that is to be lighted, while the defendant contends that the proviso in question relates, not to the Welsbach lamp, by name, but to any lamp constructed on the same general principles, and accomplishing the same general results with equal safety to

the public; that, if this be not true, the proviso is unconstitutional, and, if unconstitutional, then the whole act must fall; and that there is no prohibition against the use of the lighter products of petroleum. If the proviso does refer to a specific lamp by name, it is undoubtedly unconstitutional, as obnoxious to article 1, section 6, of the constitution of Iowa, which provides that "the general assembly shall not grant to any citizen or class of citizens privileges or immunities, which upon the same terms shall not equally belong to all citizens." Special privileges and monopolies are always obnoxious, and discriminations against persons or classes still more so. The constitution of the United States forbids legislation by the states that shall abridge the privileges or immunities of the citizens of the United States, or deny to any persons within their jurisdiction the equal protection of the laws. If the attorney general's contention as to the proper construction of the words found in the proviso under consideration be correct, it is clear that such provision violates both the federal and state constitutions. *City of Chicago v. Rumpff,* 45 Ill. 90; *Mugler v. Kansas,* 123 U. S. 661 (8 Sup. Ct. Rep 273, 31 L. Ed. 205). Exclusive privileges and franchises may, no doubt, be granted, when absolutely necessary to insure safety to the people, but not otherwise. See *Slaughter-House Cases,* 16 Wall. 36 (21 L. Ed. 394). In this case the parties agree, however, that there are other lamps, operated on the same general principle as the Welsbach, that are equally safe, and that secure the same results. This being true, the legislature has no power to select one and reject the other. To do so would be to create the most odious of monopolies. The statute under consideration was enacted in virtue of the police power of the state, but the legislature cannot under this guise create a monopoly. *Yick Wo v. Hopkins,* 118 U. S. 356 (6 Sup. Ct. Rep. 1064, 30 L. Ed. 220); *State v. Coke Co.,* 18 Ohio St. 262; *Mayor, etc., v. Thorne,* 7 Paige, 261;

*Norwich Gaslight Co., v. Norwich City Gas Co.,* 25 Conn. 19. The business of manufacturing lamps, or the use of gas or vapor for illuminating purposes, is not unusual, and does not depend primarily on governmental permission. Defendant would have the right to use any lamp and kind of gas or vapor he chose for the purposes of lighting his building, in the absence of some police regulation imposed by the legislature; and a law that required him to use a particular lamp, when others equally safe were in the market, would be a violation of his constitutional rights and would also give to the manufacturer special privileges over others producing equally meritorious lamps. If the state had bestowed a right on defendant, the prosecution of which was not a common, natural right, it might create a monopoly in this right; for with the abolition of the monopoly thus created would disappear all right to carry on the trade. Cooley, Torts, 77, 278. These views in no manner conflict with the rules announced in *Des Moines St. R. Co. v. Des Moines B. G. St. Ry. Co.,* 73 Iowa, 513. There a mere privilege was granted by a city in the use of its streets. No question of natural right was involved. In the grant of special privileges, no doubt, a monopoly may be created without violating the constitutional inhibition. Do the words contained in the statute, "the Welsbach hydrocarbon incandescent lamp," mean that particular lamp, or a lamp constructed on the same general principles, and reaching results in substantially the same manner? In construing the language of an act that is claimed to be unconstitutional, that interpretation will be adopted, if possible, which will not render it obnoxious to the constitution. But courts may not by construction import words into an act, nor make a statute read otherwise than as the legislature intended. In order to arrive at the legislative intent, a rule of construction is provided by Code, section 48, paragraph 2, which reads as follows: "Words and phrases shall be construed according to the context and the approved usages of the language. The

technical words and phrases and such other words as may have acquired a peculiar and appropriate meaning in law shall be construed according to such meaning." In the stipulation of facts it is agreed that there is a lamp known to the trade as the "Welsbach Hydrocarbon Incandescent Lamp," and that there is another lamp, not so known, but constructed on the same general principles, and reaching results in substantially the same manner. Viewing the language of the statute in the light of these facts, it seems clear that the legislature had in mind the lamp known as the "Welsbach Hydrocarbon Incandescent," and not some other lamp, although operated on the same principle. To hold otherwise would be to import into the language used some other words, and give it an effect that was evidently not intended by the legislature. It does not appear how many lamps operated on the same general principles as the Welsbach were in existence when the act in question was passed, but the reasonable inference from the agreed statement of facts is that there was at least one other kind known to the trade. To avoid holding a statute unconstitutional, we are not warranted in forcing on its language a meaning which, upon a fair test, is repugnant to its terms. *French v. Teschemaker,* 24 Cal. 518; *Bigelow v. Railway Co.,* 27 Wis. 478. It is only where the language of the act will bear two constructions that a court is justified in applying a rule that will sustain the act, rather than one which will defeat it. There is no room for interpretation when the language used is plain and admits of but one meaning. Consideration of the preceding acts of the legislature gives emphasis to the thought that the legislature, in passing the law in question, had reference to a particular lamp and not to a principle. By section 8 of chapter 185 of the Acts of the Twentieth General Assembly, no person was permitted to use the lighter products of petroleum for illuminating purposes, "provided that nothing in this act should be so construed as to prevent the use of machines or generat-

ors constructed on the same principle of the Davy safety lamp." This same language was carried into the proposed revision of the laws recommended by the code commission. See pages 507, 508, of their proposed code. For some reason the legislature did not adopt their recommendation, but, on the contrary, struck out the principle of a certain appliance, and specifically named the lamp by which the lighter products of petroleum might be burned. This, in connection with the language used, is convincing evidence that a particular lamp, rather than a principle, was referred to. There is nothing to indicate a contrary view, save the rule of construction to which we have heretofore referred. But this rule of construction cannot be used for the purpose of adding to or taking from the plainly expressed language of the legislature. *Lake Company v. Rollins,* 130 U. S. 662 (9 Sup. Ct. Rep. 651, 22 L. Ed. 1060). None of the cases cited by appellee are in conflict with these rules. Without exception, those cases relate to acts that were susceptible of two constructions, one of which would render them obnoxious to the constitution, and the other in harmony with it. The latter construction was, of course, adopted. Here there is no room for construction, for the language is as clear as words can make it.

II. Finding, as we do, that the exception contained in the act is unconstitutional, the next inquiry is, what effect does this holding have on the act as a whole? Does it destroy it *in toto,* or does the act remain, with the exception expunged? "It has been held to be sound construction of a statute that one section thereof is void and others valid, yet, if it evidently appears that one section is compensation or inducement for another, and the connection between them is such as to warrant the belief that the valid part would not have been passed alone, then the whole should be void." *City of Dubuque v. Chicago, D. & M. R. Co.,* 47 Iowa, 196; *Slauson v. City of Racine,* 13 Wis. 398. Again, it has been held that an act void in part is not necessarily

void *in toto.* If sufficient remains to effect its object without the aid of the invalid portion, the latter only shall be rejected, and the former will stand. *Warren v. Mayor,* etc., 2 Gray, 84; *Poindexter v. Greenhow,* 114 U. S. 270 (5 Sup. Ct. Rep. 903, 962, 29 L. Ed. 185) ; *Santo v. State,* 2 Iowa, 205; *Fisher v. McGirr,* 1 Gray, 1; *Huntington v. Worthen,* 120 U. S. 97 (7 Sup. Ct. Rep. 469, 30 L. Ed. 588) ; *Com. v. Kimball,* 24 Pick. 361; *Clark v. Ellis,* 2 Blackf. 10. Some courts have said that, if an unconstitutional clause of a statute cannot be rejected without affecting the intent of the legislature, the whole statute must fall [*Pollock v. Trust Co.,* 157 U. S. 427 (15 Sup. Ct. Rep. 673, 39 L. Ed. 759); *Presser v. Illinois,* 116 U. S. 252 (6 Sup. Ct. Rep. 580, 29 L. Ed. 615) ; *Spraigue v. Thompson,* 118 U. S. 90 (6 Sup. Ct. Rep. 988, 30 L. Ed. 115)] and that the two parts must be capable of separation, so that each may be read by itself, else the unconstitutional part will carry with it that which is constitutional. With these rules in mind, we turn now to the statute in question, and find that the legislature, in virtue of its police power, prohibited the use of the lighter products of petroleum for illuminating purposes, for all purposes whatever. Two exceptions to the general rule of prohibition are contained in the act, one of which is clearly valid, and the other is invalid. Is it likely that it would have passed an act containing the general prohibition, independent of this invalid exception? The two parts of the act are not dependent in terms. In other words, they may be separated, and the first may stand and is complete in itself without reference to the exception. If the act is to be declared null and void because of the unconstitutional provision, it must be on the theory that the act would not have passed, except as an entirety, and, that the general purpose of the legislature will be defeated if the general prohibition be held valid and the exception invalid. To solve this question, we should look to the history of the enactment. The Fourteenth General Assembly passed an act prohibiting the sale of the lighter

products of petroleum, without exception. See chapter 47. This act was carried into the Code of 1873 as section 3901. The Seventeenth General Assembly amended this law, and provided for the appointment of inspectors. See chapter 172. But the selling of the lighter products of petroleum was prohibited, without exception. The Twentieth General Assembly also amended the law by prohibiting the sale or use of the lighter products of petroleum for illuminating purposes, but introduced two exceptions,—one permitting the use of such products when generated outside of the building, in closed reservoirs, and the other permitting the use of machines or generators constructed on the principle of Davy's safety lamp. See chapter 185. So far, there is no right to use the lighter products of petroleum when the gas or vapor is generated in the building, unless, perhaps, it be in machines constructed on the principle of Davy's safety lamp. The exception now found in the statute that we hold contrary to the constitution was introduced by the General Assembly that passed the Code. From this hasty review of the different statutes, it will be observed that the general intent of the legislature was to prohibit the use of the lighter products of petroleum for illuminating purposes. That it had the power to pass a law which would accomplish this end there can be no doubt, and that such was its intent is equally clear. It will not do to say, therefore, that it would not have passed the act in question without the exception. To so assume would be to say that it intended to permit the sale or use of the lighter products of petroleum without let or hindrance. Such construction would be contrary to legislative policy existing for more than twenty-five years. The exceptions introduced into the acts from time to time do not indicate that the legislature intended to repeal pre-existing laws in the event these exceptions were held invalid. They were not the inducement that led to the passage of the general prohibitory laws. On the contrary, they were permissions granted under certain conditions, and, if these provisions proved ineffectual,

there is no ground for saying that the whole act was destroyed. The general prohibition was capable of enforcement, without reference to the exception, and the invalidity of the exception does not destroy the entire act. As sustaining our conclusions, see *Allen v. Louisiana,* 103 U. S. 80 (26 L. Ed. 318); *Field v. Clark,* 143 U. S. 649 (12 Sup. Ct. Rep. 495, 36 L. Ed. 294); *Willard v. People,* 5 Ill. 461; *Eells v. People* 5 Ill. 498; *Santo v. State, supra; Tiernan v. Rinker,* 102 U. S. 123 (26 L. Ed. 103); *State v. Amery,* 12 R. I. 64. We are of opinion that the defendant is not using the lamp authorized by law, and that if the exception found in the statute is unconstitutional, as it clearly is, still there is a general prohibition against the use of lighter products of petroleum for illuminating purposes when the gas or vapor thereof is generated inside the buildings to be lighted, and that, under the agreed statement of facts, defendant was guilty. While we cannot, by reversing the case, in any manner affect the status of the defendant, yet in order that a correct rule of law may be established, we are constrained to disagree with the learned trial judge, and his order directing a verdict is REVERSED.