KINDER v. LOONEY.

Opinion delivered May 10, 1926.

1. INJUNCTION—ENCROACHMENT ON FRANCHISE.—Injunction is the appropriate remedy to protect a party in the enjoyment of an exclusive franchise against continuous encroachments; the jurisdiction resting on the ground of its necessity to avoid a multiplicity of suits and to give adequate protection of the franchise.

2. INJUNCTION—EXCLUSIVE FRANCHISE—ENCROACHMENT.—To entitle the owner of a franchise to relief in equity, it is not necessary that the franchise should be exclusive, in the sense that the grant of another similar franchise to be exercised and enjoyed at the same place would be void; it being exclusive as to one attempting to exercise the same franchise without legal sanction.

3. PUBLIC SERVICE COMMISSIONS—REGULATION OF MOTOR BUSSES.—Motor busses operating as public carriers between municipalities are "common carriers," within Gen. Acts of 1921, p. 177, conferring on the Railroad Commission jurisdiction of all matters pertaining to the regulation and operation of common carriers.

4. PUBLIC SERVICE COMMISSIONS—REGULATION OF MOTOR BUSSES.—The Railroad Commission could not arbitrarily decline to issue a certificate of public convenience and necessity to one who, in good faith, applied for a license to operate busses between certain municipalities and offered to comply with the rules prescribed by the Commission.

5. PUBLIC SERVICE COMMISSIONS—RESTRICTING NUMBER OF BUSSES.—Before the Railroad Commission can limit the number of certificates of public convenience and necessity issued to companies over a given route, there must be a finding, based upon evidence, that such restriction will result in a benefit to the public.

6. PUBLIC SERVICE COMMISSIONS—RIGHT TO OPERATE MOTOR BUSSES.—The holder of a certificate or license from the Railroad Commission to operate busses between certain municipalities cannot enjoin another from operating his busses over the same route where the latter has made proper application for a certificate or license to operate over the same route, but his application has not been acted upon by the Railroad Commission.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy*, Chancellor; reversed.

STATEMENT BY THE COURT.

On the 9th day of March, 1926, appellee filed a complaint in equity against appellants to restrain them from operating a passenger transportation business by motor

bus lines between the city of El Dorado, Union County, Arkansas, and other points in the State.

On the 11th day of March, 1926, appellants filed an answer in which they denied insolvency and denied that they had not complied with the requirements of the Railroad Commission in the operation of their business.

The record shows that the appellants were employees of W. H. Johnson of Shreveport, Louisiana, who operates motor busses between cities within the State of Arkansas. W. H. Johnson did business as the Union Bus Line, and operated motor busses under a schedule approved by the Arkansas Railroad Commission in December, 1925. At that time he had a station in the city of El Dorado, Arkansas, and maintained a schedule for his motor busses running south. He allowed the appellants the use of his station and required them to maintain his schedule of operation and to give satisfactory service. They paid him a certain per cent. of all the passenger tickets sold.

The record shows that W. H. Johnson, doing business as the Union Bus Line, filed an application with the Arkansas Railroad Commission for a permit to operate motor busses between the city of Camden and intermediate points, and that said application was set down for formal hearing before the Commission at El Dorado, Arkansas, on March 29, 1926.

The record also shows that the rules promulgated and adopted by the Commission require a hearing to be had upon every application filed covering a route upon which a previous permit has been granted.

W. H. Johnson, doing business as the Union Bus Line, filed his application for a permit to operate a bus line as above stated, and complied with the rules and regulations of the Arkansas Railroad Commission as to filing bonds, etc. The hearing of his application was deferred by the Arkansas Railroad Commission until March 29, 1926, because of the crowded condition of its docket.

The record shows that W. H. Johnson was operating motor busses under the rules of the Arkansas Railroad

Commission during the year 1925. On the 5th day of February, 1926, the Arkansas Railroad Commission granted a certificate of convenience and necessity to J. P. Looney of El Dorado, Arkansas, to operate motor busses over the route specified in his application. The permit granted him was to operate a motor bus line on the same schedule and over the same route as that applied for by W. H. Johnson, doing business as the Union Bus Line. J. P. Looney is a taxpayer of El Dorado.

On the 13th day of March, 1926, the cause was submitted to the chancery court on final hearing, and it was decreed that appellants be enjoined from operating motor busses or motor vehicles for the transportation of passengers in Union County, Arkansas, until such time as they have complied with the laws of the State of Arkansas and the regulations of the Arkansas Railroad Commission, and have obtained from said Commission a permit or certificate of necessity and convenience to transact such business.

The case is here on appeal.

*Kirby & Hays* and *Oren Parmeter,* for appellant.

*Coulter & Coulter* and *R. M. Hutchins,* for appellee.

HART, J., (after stating the facts). The Arkansas Railroad Commission gave J. P. Looney what was termed a certificate of public convenience and necessity to operate motor busses over the same route and practically under the same schedule as attempted to be operated by the Union Bus Line.

In 5 Pomeroy's Eq. Jur. (2 ed. § 2016), it is said that an injunction is the appropriate remedy to protect a party in the enjoyment of an exclusive franchise against continuous encroachments. Prof. Pomeroy said that "the jurisdiction rests on the firm and satisfactory ground of its necessity to avoid a ruinous multiplicity of suits, and to give adequate protection to the plaintiff's property in his franchise."

In § 2017, Prof. Pomeroy says that it is not necessary, "to entitle the owner to relief in equity, that the franchise should be an exclusive franchise in the sense

that the grant of another similar franchise to be exercised and enjoyed at the same place would be void.''

The reason given is that, ''as to the one who is invading his rights without legal sanction, the franchise is an exclusive franchise, although the owner of it might not be entitled to any protection as against the granting of a similar franchise to another.''

This brings us to the question of whether or not the Union Bus Line, for which appellants were working, was acting in violation of law in operating its motor busses, and also to a consideration of the interpretation of our statute establishing the Arkansas Railroad Commission and giving it power to regulate public utilities and service corporations, and the rules and regulations adopted by the said Commission.

The act in question was passed by the Legislature of 1921, and comprises twenty-seven sections. General Acts of 1921, p. 177.

Section 5 of the act provides that the jurisdiction of the Commission shall extend to and include all matters pertaining to the regulation and operation of all common carriers, etc., and this court has held that motor busses operating as public carriers between municipalities are included in the words ''all common carriers.'' *Mason* v. *Intercity Terminal Ry. Co.,* 158 Ark. 542.

Section 6 provides that those engaged in public service business shall establish and maintain adequate and suitable facilities and shall perform such services in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public. This section and others also gives the Commission authority to establish rates and maintain the same.

Section 20 provides for an appeal to the circuit court from any order made by the Commission.

Among other rules promulgated by the Arkansas Railroad Commission is the following:

''(1). No person or motor transportation company shall begin to operate any motor-propelled vehicle for the transportation of persons or property, or both, for

compensation between fixed termini or over a regular or irregular route in this State, without first obtaining from the Railroad Commission a certificate declaring that a public convenience and necessity require such operation.''

We all agree that the States have the undoubted right to regulate motor vehicles operating for hire as common carriers within the State, and that the statutory regulation of motor vehicles varies in the different States. The statutes of many States creating public service commissions require certificates of public convenience and necessity before any such company can begin or carry on business. Other statutes give public service commissions the power and authority to limit or restrict the number of motor vehicles operating as public carriers over given routes to a number sufficient to meet the public convenience and necessity. Such legislative enactments have commonly been sustained in the courts.

The statute under consideration in this case does not confer express authority upon the Arkansas Railroad Commission to establish a rule that no automobile transportation company shall operate for the transportation of persons for hire over a regular route in this State without first having obtained from the Commission a certificate declaring the public convenience and necessity require such operation.

It is claimed, however, that such authority in the Commission is necessarily implied by the language of § 5, providing that the jurisdiction of the Commission shall extend to and include all matters pertaining to the regulation and operation of all common carriers. In other words, it is claimed that giving the Commission jurisdiction over all matters relating to the operation of common carriers gives it the right to promulgate a rule that no motor busses shall operate as common carriers over a given route until they have obtained a certificate of public convenience and necessity, and that this requirement is a prerequisite to their operation.

No adjudicated case has been cited in support of this contention, and a majority of the court expressly

reserves this question for future determination, for the reason that the conclusions we have reached under the facts of this case render it unnecessary for us to decide the question.

Assuming that the Legislature had passed a statute in the language of the rule promulgated by the Commission and copied above, we do not think that it would give the Commission the power to arbitrarily decline to issue a certificate of public convenience and necessity, or to restrict and limit the number of corporations desiring to operate over a given route without a hearing. All the authorities hold that statutes regulating public service corporations are enacted to promote the common welfare as well as to protect parties who invest money in such public service corporations. It is true that laws regulating them are primarily based on the public needs, and not to promote the desire of such corporations to serve the public.

Now, if it be conceded that the rule promulgated by the Commission is necessarily implied under the terms of the act creating the Commission and defining its powers, it follows that the Commission could not decline to issue a certificate of public convenience and necessity to a company applying in good faith therefor and offering to comply with the rules of the Commission with respect to bonds and other conditions imposed upon such applicants, without adequate reason therefor.

A certificate of public convenience and necessity is nothing more than written evidence that the party obtaining it has complied with the provisions of the statute and the reasonable rules and regulations of the Commission. It will be noted that the rule itself does not restrict the number of certificates of public convenience and necessity which may be issued to companies operating motor busses for hire over a given route. If the Commission may limit the number, it must act in a reasonable manner and upon evidence. It must determine the question with justice and fairness to the public, as well as to the public service corporations. It cannot restrict the

number of certificates of public convenience and necessity issued to companies over a given route without reasonable evidence tending to show that such restriction would result in a benefit to the public. The decision of the Commission limiting the number of such certificates must in any event be based upon a finding that the public needs in the premises will be best served thereby.

In the case at bar, the Union Bus Line had an established station, and was operating a bus line over the route in question during the year 1925. Application was made to the Commission for a certificate to operate during the year 1926, and the conditions prescribed by the rules and regulations of the Commission had·been complied with. Owing to the crowded condition of the docket of the Commission, the hearing of the application was postponed until the 29th day of March, 1926. In the meantime the applicant desired to operate motor busses over the route and under the schedule set forth in its application. J. P. Looney had already obtained a certificate of public convenience and necessity over the same route and under the same schedule as that applied for by the Union Bus Line.

The record shows that the rules promulgated and adopted by the Commission require a hearing to be had upon every application filed covering a route upon which a previous permit had been granted, and that, owing to the number of cases before the Commission, it could not hear this application before March 29, 1926, and it was therefore set down for hearing on that date.

The record also shows that the Commission expressed the view that it was a violation of its rules and regulations for any applicant to operate a bus line until it was issued a permit to do so, but that it has been the custom with all applicants running competitive lines to continue their operations until a final hearing should be had upon their case.

Under the facts stated, the majority of the court is of the opinion that J. P. Looney had no right to an injunction against the Union Bus Line, or its employees, until after the final hearing by the Commission of its appli-

cation and the rejection of the same. If the Commission, on final hearing, had denied the application of the Union Bus Line for a certificate of public convenience and necessity, and the company itself, or through its employees, had attempted to operate in violation of the orders of the Commission, then Looney, under the principles of law above announced, would have had a right to enjoin them from so operating. If the Union Bus Line had deemed itself aggrieved by the ruling of the Commission on final hearing, it would have had an appropriate method of review under § 20 of the act in question. Until there was a final hearing in the matter, the Commission could not intelligently determine whether or not public necessity and convenience required it to limit or restrict the number of companies operating over the route in question.

The result of the views of a majority of the court is that the decree of the chancellor was wrong and should be reversed, and the complaint of the plaintiff will be dismissed here.

McCULLOCH, C. J., (dissenting). The use of public highways by a public carrier is a privilege which the State may give or withhold, and the privilege may be granted upon such terms as may be determined by the lawmakers. Such use may be regulated, and, as a part of the regulation, the number of conveyances to be used on a given route may be limited. Pond on Public Utilities, §§ 714, 715. Now, if the statutes of this State have conferred upon the Commission the power to issue permits and determine the number of such permits to use a given route (and I think such power is conferred in the statute), then it necessarily follows that such use cannot be taken without first securing a permit—not even during the period of delay while an application is being considered by the Commission or while the proceedings are in progress. The burden is on the applicant to show that the public convenience requires additional service, and that he is entitled to a permit to furnish the same. Pond on Public Utilities, § 820.

Our statute provides a remedy by appeal to the circuit court of Pulaski County from erroneous orders of the Commission. Acts 1921, p. 177, § 20. An applicant cannot bid defiance to the order of the Commission and use the highway without a permit, nor is he entitled to use the highway while the application is pending. He must wait until he gets the permit.

I dissent from that part of the opinion of the majority which holds that, until there has been a final hearing by the Commission and determination of an application, the applicant may continue to use the highway.