Missouri Pacific Transportation Company *v.* Gray.

4-6948                                     167 S. W. 2d 636

Opinion delivered January 11,.1943.

*Henry Donham,* for appellant.

*P. A. Lasley,* for appellee.

Griffin Smith, C. J. The question is, Did the court err in sustaining corporation commission's finding that L. N. Gray[1] should be granted a certificate of convenience and necessity authorizing him to operate a bus line between Fordyce and Little Rock?[2]

Gray's petition was filed April 18, 1940. He at that time was authorized to operate between El Dorado and

---

[1] Gray was doing business as Eagle Transportation Company. For details regarding transportation transactions see case numbered 6933—H. M. Gregory *et al.* v. Willis V: Lewis *et al.,* post p. .‒‒‒, 167 S. W. 2d 499. The opinion is concurrent with this.

[2] The certificate held by Gray when petition for extension was filed called for "closed doors" between Fordyce and Thornton.

Fordyce over highway 167. Highway seven (between El Dorado and Camden) and highway seventy-nine (between Camden and Thornton) were used by Missouri Pacific Transportation Company. On them are Norphlet, Smackover, Camden, Eagle Mills, and Bearden. Highways 167 and 79 join at Thornton. Between Thornton and El Dorado (by highway 167) are Hampton and Calion, the former having a population of 686, and the latter 712, according to the 1940 federal census.

It will be observed that the only route used by Gray *and* the transportation company prior to action of the commission in extending Gray's rights November 21, 1940, was that part of highway 167 between Thornton and Fordyce, as to which Gray was not allowed to accept passengers.

The commission's finding was that points between Little Rock and Fordyce did not require additional service; nor was there a requirement for greater facilities between Fordyce and Little Rock. The petitioner, however, was authorized ". . . to serve the towns of Calion, Hampton, and Thornton, to Little Rock, and from Little Rock is permitted to serve Thornton, Hampton, and Calion to El Dorado and intermediate points between Fordyce and El Dorado, provided service between Thornton and Fordyce must be from Little Rock and not from Fordyce. . . . [He] is not permitted to render service from Fordyce to Little Rock, nor from Little Rock to Fordyce, nor to or from intermediate points between Little Rock and Fordyce. . . ."

We think the commission correctly determined that the populated area on highway 167 south of Fordyce was entitled to better service, and that travelers taking passage on Gray's buses should not be required unnecessarily to spend time at Fordyce waiting for Little Rock connections; nor should passengers from points north of Fordyce en route to the area in question who take passage on appellant's buses be unreasonably inconvenienced.

It was shown, however, that Gray operated but one conveyance: a 1939-model International chassis with

"home-made" body. With this he made two daily round trips between El Dorado and Fordyce.

The commission's finding that appellant's service from Little Rock to El Dorado was satisfactory is not questioned. In addition to the bus service maintained by Gray and by appellant, train schedules afforded convenient means of travel to and from some of the points to which reference has been made.

Buses operating on the three highways did not connect at Fordyce. Appellant insists it is anxious to make adjustments in order to accommodate passengers originating on Gray's route; but thinks there was want of coöperation. It is not uncommon for competitors to justify their own conduct and to believe that want of reciprocity is chargeable to the adverse party. Whatever may be true here in this respect, a preponderance of testimony shows there was ample seating room on the several buses and they were operated with sufficient frequency to meet standards. The thing wanting was connections. This deficiency could be corrected by the commission. Pope's Digest, § 2026. The case is similar to *Missouri Pacific* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644, decided February 10, 1941. At the time the case at bar was before the commission it did not have benefit of the Williams case.

Appellant's argument that the certificate issued to Gray creates competition is not controlling. The paramount consideration is public convenience and necessity. A service corporation, or individuals operating in a particular field in response to authority to act as common carrier, may be required to do many things they or it would prefer to avoid. On the other hand, public convenience is best served by operators who are financially responsible, and who because of such responsibility are able to utilize modern equipment in an efficient manner.

Undisputed evidence is that appellant has never profited by reason of the Little Rock-to-El Dorado service. But, as we have said, this is not the criterion. Rather, it is a component the commission must consider in ascertaining what the public is entitled to in a particular case.

Since readjustment of schedules will bring relief south of Fordyce, and this may be accomplished without infringing on a route appellant has been authorized to serve, it was error to affirm the commission's order.

The judgment is reversed. The cause is remanded to circuit court with directions to cancel the commission's order of November 21, 1940.

If because of changed conditions and the inability of appellant to render sufficient service over the highways covered by its certificate additional facilities are required, the commission has continuing authority to hear evidence and determine the question.

Mr. Justice Carter disqualified and did not participate in the consideration or determination of this case.

Robins, J., dissenting. The Arkansas Corporation Commission, after protracted hearings, one of which was held in the territory affected, found that public necessity and convenience required the additional service which the appellee, Gray, offered and was financially able to provide. It was established by the undisputed testimony that, under conditions existing when the appellee made application for the permit under review here, citizens of Hampton and other important towns in Calhoun county were unable to make the trip to Little Rock and return without spending the night away from home, and likewise the round trip from Little Rock to and from any of those communities required two days. The circuit court reviewed this testimony and upheld the finding of the Corporation Commission.

While, under the provisions of our statute, the Supreme Court tries a case of this kind de novo, there is nothing in the statute that prevents this court from according to the finding of the circuit court and to that of the Corporation Commission the presumption of correctness to which the decision of any duly constituted fact finding tribunal is entitled. Under our law and practice, all cases appealed from chancery court are tried de novo in the Supreme Court, but the rule universally adhered to is that the finding of the chancellor

on a question of fact will not be disturbed on appeal unless it is against the clear weight of the testimony.

It is generally held that the finding of fact made by a body such as the Corporation Commission should not be set aside unless such finding is against the weight of the testimony. The rule is thus stated in 9 Am. Jur. 494: ''There are manifestly practical reasons for giving peculiar weight to the finding of a commission, for such a body from the nature of its organization and the duties imposed upon it by statute is peculiarly competent to pass upon questions of fact of the character arising in the determination of questions relating to the reasonableness of rates and regulations. In fact, the commission's findings are in case of conflict of testimony entitled to a probative force upon a consideration of the case on appeal to the courts, for the commission, in addition to knowledge of conditions of environment and of transportation relations, has had the advantage of the presence of the witnesses before it.'' In 51 C. J., p. 77, it is said: ''The question is not whether there is a scintilla of evidence to support the order, but whether it is reasonably supported by all the evidence; but the order should not be 'disturbed unless so manifestly against the weight of the evidence or so clearly unsupported by it as to show mistake or wilful disregard of duty.'' This principle was recognized and upheld by the Supreme Court of the United States in the following cases: *East Tennessee, Virginia & Georgia Railway Company, et al.*, v. *Interstate Commerce Commission*, 181 U. S. 1; *Louisville & Nashville Railroad Company, et al.*, v. *Behlmer*, 175 U. S. 648, and *Illinois Central Railroad Company* v. *Interstate Commerce Commission*, 206 U. S. 441. Applying this rule in a consideration of the evidence in this case, it can not be said, in my opinion, that the finding of the Corporation Commission and of the circuit court is against the weight of the testimony. It is not disputed that, under the service proposed by the appellee, and covered by the permit issued to him, the people of a large territory will obtain needed transportation facilities not previously enjoyed by them and persons desiring to travel between El Dorado and Little Rock will have the advantage of an

additional and convenient service. The principal complaint of the appellant is that, by reason of the service to be given by the appellee under this permit, some of its passenger traffic from El Dorado to Little Rock and from Little Rock to El Dorado may be diverted, but, as shown by the testimony offered by the appellant, the through traffic carried by the appellant between these two points is so small that the appellant could not be seriously injured by diversion of any part of such traffic. It is also urged by appellant that, in order to operate this bus line, it has made a large investment, which might be jeopardized by the proposed competition, but virtually the only investment made by it is the amount it has expended for buses, the value of which would, of course, not be destroyed if it ceased entirely its operations over this particular route. The appellant's position in this matter is not comparable to that of a railroad company, which must expend large sums for right-of-way, tracks, switches and depots, in addition to the amount necessary to procure rolling stock. The appellant does not have any proprietary interest in the public highways over which it and appellee are operating their buses. These highways were built at great cost by the public, are owned by the public and are maintained by the state for public convenience. In effect, this court is asked to give appellant a monopoly in the use of these publicly owned and maintained highways. There is no constitutional or statutory authority for such a monopoly. On the contrary, it is provided by article II, § 19, of the Constitution of this state: "Perpetuities and monopolies are contrary to the genius of a republic and shall not be allowed." The legislature, in authorizing the granting of licenses for motor bus carriers, provided (subdivision c, § 2025 of Pope's Digest): "Nor shall any such license, in any event, be exclusive." The Motor Bus Act enacted by the General Assembly of 1941 (Acts of 1941, page 937) contains this restriction (subdivision d, § 9): "No certificate issued under this act shall confer any proprietary or property rights in the use of the public highways." Justice HART, speaking for the court, in the case of *Kinder* v. *Looney,* 171 Ark. 16, 283 S. W. 9, said: "If the

commission may limit the number (of buses), it must act in a reasonable manner and upon evidence. It must determine the question with justice and fairness to the public, as well as to the public service corporations. It cannot restrict the number of certificates of public convenience and necessity issued to companies over a given route without reasonable evidence tending to show that such restriction would result in a benefit to the public." While it might be properly held, under certain conditions, that the public interest and convenience would be better served by denying the application of a competing carrier for license to traverse highways already served by existing facilities, no such situation is here presented.

For these reasons, I must dissent from the opinion of the majority in this case.