This appeal is the continuation of an attack on the constitutionality of 7 and 8 of Act 213 of the General Assembly of 1939. The appellant is an Arkansas corporation organized with the hope and expectation (as yet unrealized) of hauling passengers for hire in North Little Rock, which is a city of the first class, and is one of the appellees. The Checker Cab Company, also an appellee, is, and was at all times herein mentioned, engaged in hauling passengers for hire in North Little Rock, and is resisting the desire of the appellant to engage as a competitor.
On May 24, 1943, appellant, pursuant to 1 to 6, inclusive, of said Act 213, filed its application with the city officials of North Little Rock for a permit to engage in the taxicab business in said city, and offered full compliance with the municipal ordinance (No. 950) of the city. The application was heard by the city council, with Checker Cab Company protesting issuance of the permit. Many witnesses testified, and the entire proceedings were duly transcribed and preserved. The city council found that there was need for additional taxicab service, and referred the matter to a committee of the council to decide the extent of the needed improvement in service. The council later approved the recommendation of the committee that the Checker Cab Company be given ninety days to comply with the "request" of the council for adequate taxicab service. It was conceded in the oral argument before this court that the action of the council in this ninety-day provision was dictated by the council's belief of the mandatory provisions of 7 and 8 of Act 213 of 1939. *Page 978 
Appellant then filed its petition for writ of certiorari in the Pulaski circuit court, reciting the facts, attacking 7 and 8 of the Act 213 as unconstitutional, attacking the status of the Checker Cab Company, and praying that no additional permits be issued to Checker Cab Company, and that the entire proceedings before the council be certified to the court, and also praying that its permit be issued as sought before the council. The transcript of the council proceedings was duly certified to the circuit court, and the matter was heard on that record, together with the response of the Checker Cab Company and the response of the city. The learned circuit judge delivered a memorandum opinion, which is in the transcript and has been beneficial to this court in the consideration of the case. The circuit court denied appellant all relief, and after an unavailing motion for new trial this appeal followed, in which is presented the questions hereinafter discussed.
I. The Constitutionality of Sections 7 and 8 of Act 213 of 1939. This act is entitled "An Act Clarifying the Jurisdiction of Cities of the First Class to Regulate and Control Taxicabs, and for Other Purposes," and consists of ten sections.
Section 1 defines taxicabs.
Section 2 clothes cities of the first class with exclusive power to permit, regulate, and control by ordinance the business and operation of taxicabs in said cities.
Section 3 concerns rates.
Section 4 prohibits operation of taxicabs in any city without a permit of that city.
Section 5 concerns the contents and essentials of an application for a permit.
Section 6 provides that when an application for a permit has been filed, notice must be given to every other taxicab operator in the city, and any and all interested persons may be heard by the council.
Section 7, here assailed as unconstitutional, provides: *Page 979 
"If after such hearing the governing body of, such city shall find that the public convenience and necessity require additional service of the type or character described in such application, it shall cause such finding to be entered in the records of such governing body and shall give to each and all taxicab operators who may at the time of the filing of such application have been operating in such city not less than sixty (60) days and not more than one hundred twenty (120) days from and after the date of the actual recording of such finding within which to establish and inaugurate the rendition of such additional service as the governing body of said city may have found and declared to be required by public convenience and necessity."
Section 8, here assailed as unconstitutional, provides:
"If within the time so fixed all or any of such taxicab operators shall have inaugurated and established such service, then the governing body of such city shall reject such application; but if within said time none of such operators shall have inaugurated and established such service, then the governing body of said city may, in the event that it shall, after due consideration of all relevant facts, circumstances and conditions, including the probable effect upon the public safety of the operation upon the streets and ways of such city of the equipment necessary for the rendition of such additional service, find that the grant of such application is in the public interest, grant such application.
"Any final action of the governing body of the municipality in respect of any such application shall be subject to judicial review.
"Notwithstanding anything in this act contained, neither any person, firm, corporation or association lawfully engaged in rendering or furnishing any class or type of service referred to in section 2 hereof in any city of the first class on the effective date of this act, nor the successors or assigns of any such, shall be required to secure any permit herein referred to in order to continue such business." *Page 980 
Section 9 states that the provisions and sections of the act are separable, if any should be unconstitutional.
Section 10 is the emergency clause (which we here note failed of adoption), so that the act became effective June 9, 1939.
Appellant assails 7 and 8 as violative of Article II, 3, 18 and 19, of the Arkansas Constitution, and also as violative of Amendment 14 of the United States Constitution. We have concluded that 7 and 8 are violative of Article II, 19, of the Arkansas Constitution, so we do not consider the other sections of the State Constitution or the 14th Amendment to the United States Constitution.
Article II, 19, of the Arkansas Constitution says, in part:
"Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed, . . ."
This same provision is contained in Article II, 19, of the Arkansas Constitutions of 1836, 1861, and 1864. For some reason, the framers of the Constitution of 1868 did not include this salutary provision, but the great men who framed the present Constitution of 1874 saw fit to use the quoted language. This provision is not unique to the Constitution of Arkansas; similar provisions are found in Article 41 of the Declaration of Rights of the Constitution of Maryland; in Article I, 31, of the Constitution of North Carolina; in Article I, 22, of the Constitution of Tennessee; in Article I, 26, of the Constitution of Texas; in Article II, 32, of the Constitution of Oklahoma; and in Article I, 30, of the Constitution of Wyoming. See, Joyce on Monopolies, p. 270 et seq. In 36 Am.Jur., 521 et seq., there is a discussion of the anti-monopoly provisions of various State Constitutions; and general rules are enunciated from the many cases involving these provisions.
Mr. Justice EAKIN, in Ex parte Levy, 43 Ark. 42, 51
Am. Rep. 550, in discussing this provision in the Arkansas Constitution, said: *Page 981 
"The monopolies which in England became so odious as to excite general opposition, and infuse a detestation which has been transmitted to the free States of America, were in the nature of exclusive privileges of trade, granted to favorites or purchasers from the crown, for the enrichment of individuals, at the cost of the public. They were supported by no considerations of public good. They enabled a few to oppress the community by undue charges for goods or services. The memory, and historical traditions of abuses resulting from this practice, has left the impression that they are dangerous to liberty, and it is this kind of monopoly against which the constitutional provision is directed. Not all the states have felt this apprehension. There is no indication of it in the Federal Constitution."
In considering the constitutionality of any act of the legislature, we are always mindful of the rule so well expressed by Mr. Justice HART in McClure v. Topf 
Wright, 112 Ark. 342, 166 S.W. 174: "It is not to be doubted that the legislature has the power to make the written laws of the state unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare it."
But the Constitution says: "Perpetuities and monopolies are contrary to the genius of a republic and shall not be allowed."
This language is too clear to need elucidation, and no amount of judicial interpretation should ever be permitted to cause the slightest deviation from the clear language of the constitutional inhibition. We do not hold that 7 and 8 of the Act 213 create a perpetuity, because we are mindful of the fact that any subsequent legislature could repeal the entire act, or any part thereof, under the authority of the Third Slaughterhouse Case (Butchers' Union Slaughterhouse, etc., v. Crescent City Live Stock, etc., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585), and also under the authority of our cases of Wade v. Hornor, *Page 982 115 Ark. 250, 170 S.W. 1005, Ann. Cas. 1916E 167; and Johnson v. Quarles, 121 Ark. 601, 182 S.W. 283. But we hold that the 7 and 8 of the Act 213 create a monopoly within the constitutional inhibition.
In the case at bar it was shown that on the effective date of the act (June 9, 1939) the appellee, Checker Cab Company, was the only taxicab company operating in North Little Rock. By 7 and 8 of the act, that company was entitled: (1) to a notice of the finding of the council as to the desire for better taxicab service; (2) to have not less than 60 days to meet any requirement for improved service that any proposed competitor had proved necessary or convenient for the inhabitants of the city; (3) to have the exclusive franchise continue if it (appellee, Checker Cab Company) met the request of the city for improvements in service; and (4) under the last sentence of 8, to continue in business indefinitely without being required to secure any permit.
Did the Checker Cab Company promise any continuance of service for any length of time in order to secure this privilege at the hands of the legislature? No. Merely because it was operating in North Little Rock on June 9, 1939, the Checker Cab Company received a valuable privilege created at the hands of the legislature — and without any legislative finding in the act, based on substantial reasoning, that an exclusive taxicab business in cities of the first class was for the public welfare, or was an exercise of the police power. It is true that the anti-monopoly provision in our Constitution is to be read and considered along with the police powers and public welfare powers; but, even so, when, as here, there is a clear showing of absence of the proper exercise of the police and welfare powers, then the questioned law should not be suffered to stand. See Annotation in 53 L.R.A. 763, and Annotation in 1 Ann. Cas. 847.
The record here before us does not indicate what conditions prevailed in other cities of the first class in Arkansas on June 9, 1939, as regards the number of taxicab companies in operation. But regardless of such conditions, it is clear that a monopoly was created by the *Page 983 
legislature for the benefit of those taxicab companies in operation in cities of the first class on the effective date of this act. Not only was new competition stifled, it was entirely prevented so long as 7 and 8 of this act remained in force.
Appellees say that monopolies in the field of common carriers are not repulsive or unconstitutional; and to sustain that contention they cite: Kinder v. Looney,171 Ark. 16, 283 S.W. 9; Missouri Pacific R. R. Co. v. Williams, 201 Ark. 895, 148 S.W.2d 644; Potashnick Truck Service v. Missouri Arkansas Transportation Co., 203 Ark. 506, 157 S.W.2d 512; Missouri Pacific Transportation Co. v. Gray, 205 Ark. 62, 167 S.W.2d 636. These cases do not sustain appellees. In fact, in each case it was impliedly recognized that the Arkansas Corporation Commission has authority to license competition when public convenience and necessity justify competition. As complete refutation to appellees' statement, attention is called to the language found in 2025, Pope's Digest. It is in this section that the procedure is outlined for the granting of a license to a motor carrier by the Commission; and these words are found in the statute: "nor shall any license, in any event, be exclusive." This quoted language effectively negatives any idea of a monopoly.
We also point out that in the statute creating the Department of Public Utilities (Act 324 of 1935) the guiding principle is the public convenience and necessity. It is a question, of fact in each case as to how public convenience and necessity may best be served, and competition is mandatory when public convenience and necessity can best be served thereby. See, Department of Public Utilities v. Arkansas-Louisiana Gas Co., 200 Ark. 983,142 S.W.2d 213.
In further effort to sustain 7 and 8, the appellee, Checker Cab Company, cites us to Merchants Transfer Warehouse Co. v. Gates, 180 Ark. 96, 21 S.W.2d 406, where it was held that taxicabs were subject to regulation and control because they used the public highways. *Page 984 
Merely because taxicabs might be called public carriers does not merge the fundamental difference that it is one thing to regulate and tax a public carrier, and yet another thing to grant it a monopoly in the teeth of the constitutional inhibition. In the case of Arkansas Railroad Commission v. Castetter, 180 Ark. 770, 22 S.W.2d 993, 68 A.L.R. 1018, Mr. Justice BUTLER pointed out that regulation is one thing and monopoly is vastly different. That case shows why Merchants Transfer Company v. Gates does not support the position of the appellee, Checker Cab Company, in the case at bar. The case of Arkansas Railroad Commission v. Castetter clearly points the way to the unconstitutionality of 7 and 8 here assailed.
Turning from the decisions of our own state, the Checker Cab Company cites us to cases from other states; but in none of these cases was there any language comparable to the language in 7 and 8 here under attack to the effect (1) that the person, or persons, operating taxicabs at the effective date of the act was, or were, allowed time to comply with any council requirements before such privilege could be upset, and (2) that upon such compliance no additional competition could be allowed. The first case cited by appellee is Fletcher v. Bordelon,56 S.W.2d 313, from the 9th District Court of Civil Appeals of Texas. A study of that case shows that the ordinance of Beaumont (which was sustained) had no language comparable to 7 and 8 of the act here under consideration. The Beaumont ordinance was in general pattern similar to our Corporation Commission Act (2025, Pope's Digest) under which certificates of public convenience and necessity are granted to motor carriers in this state. People ex rel. Johns v. Thompson,341 Ill. 166, 173 N.E. 137, is cited by appellee. The ordinance of the city of Chicago there involved was not assailed on the ground here urged, to-wit, the creation of a monopoly. No reference was made in the case to any language in the Illinois Constitution similar to the language in Article II, 19, of our Constitution. Another case cited by appellee is that of Capitol Taxicab Company *Page 985 
v. Cermak, 60 F.2d 608, decided by the United States District Court for the Eastern District of Illinois, and likewise involving the same Chicago ordinance involved in Johns v. Thompson, supra. The holding of the federal court is against the position of the appellee, Checker Cab Company, in the case at bar, because, in the concluding part of the opinion, the federal court used this language:
"To the argument that the ordinance tends to create a monopoly, it is sufficient answer that the city has not by its legislation, surrendered its right to grant other and further certificates to all other applicants. It may still grant applications, and undoubtedly adequate remedy exists against affirmative exercise of arbitrary authority in that respect. The public policy of Illinois has been declared by the legislature of Illinois, according to the interpretations of the Supreme Court, to be that, before one utility or public carrier is permitted to enter the business of another already in the field, it is but a matter of fairness and justice that it be shown that the new utility answers the demands of public convenience and necessity."
We conclude that all of 7 and 8 of Act 213 of 1939 are unconstitutional, and must be stricken, except the sentence found in 8, which reads: "Any final action of the governing body of the municipality in respect of such application shall be subject to judicial review."
Section 9 of the Act 213 declares that the various sections and provisions are separable; and an examination convinces us that the legislative declaration is correct in this respect; so that with all of 7 and 8 omitted, except the sentence providing for judicial review, the remaining sections make a workable act; that is, after the hearing provided in 6, the council is then free to grant or refuse the permit to the competitor, as the council in the exercise of good judgment may see fit for the best interests of the city and the inhabitants, and then "any final action of the governing body of the municipality in respect of any such application shall be subject to judicial review." *Page 986 
II. The Status of the Checker Cab Company on the Effective Date of Act 213. The appellant has shown: (1) that Ordinance 950 of North Little Rock was passed in 1935, and required all taxicab companies having permits to have liability insurance; (2) this ordinance was in effect at the effective date of Act 213; (3) that the Checker Cab Company did not have such insurance, but had entered into an agreement with the mayor of the city for the deposit of $5,000 in a bank account in lieu of compliance with the ordinance; and (4) that there was no repeal of Ordinance No. 950.
On this showing the appellant contends that the Checker Cab Company was not "lawfully operating" in North Little Rock, notwithstanding the receipt of tax each year by the city from the Checker Cab Company. With 7 and 8 (except the provision for judicial review) stricken as unconstitutional, the status of the Checker Cab Company presents no substantial issue: because 7 and 8 were the only sections that gave any preference to any operator on the effective date of the act, and it was conceded, in the oral argument before this court, that the council had considered itself bound by 7 and 8 of the act.
It follows that the judgment of the circuit court is reversed, and the cause is remanded, with directions to enter a judgment declaring all of 7 and 8 of Act 213 of 1939 to be unconstitutional, except the sentence providing for judicial review. The circuit court is also directed to enter an order (1) quashing the order of the council giving the Checker Cab Company time to furnish additional service, and (2) remanding the record to the council, with leave to the plaintiff, if it so desires, to pursue its application to the city of North Little Rock for a permit, on which application the council will proceed in a manner not inconsistent with this opinion.
Costs of both courts are awarded against appellee, Checker Cab Company. *Page 987