The Honorable George Hopkins State Senator 78 Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This letter is a response to your request for an opinion regarding several issues arising out of the provisions of A.C.A. § 23-112-311.
The provisions of A.C.A. § 23-112-311 set forth a procedure under which manufacturers or distributors of new motor vehicles must notify the Motor Vehicle Commission of their intent to establish or relocate dealerships in "relevant market areas" where existing dealers market the same product to be offered by the new or relocating dealership. Under the procedure set forth in the statute, any existing dealer may "protest" the establishment or relocation of the additional dealership. The Commission must determine whether there exists "good cause" for permitting the additional dealership. If it determines that good cause does not exist, the additional dealership may not be established or relocated.
You have presented the following question:
Are the provisions of A.C.A. § 23-112-311 unenforceable under:
(a) federal antitrust laws;
 (b) the U.S. Constitution (including applicability of the Supremacy Clause);
 (c) the Arkansas Constitution (including the prohibition of monopolies);
(d) any superseding statute(s) of the State of Arkansas; or
 (e) any court decisions which constitute precedent in the State of Arkansas?
RESPONSE
Federal Antitrust Laws[1]
It is my opinion that the provisions of A.C.A. § 23-112-311 are not rendered unenforceable by federal antitrust laws. A displacement of competition that is intentionally authorized by state legislative action is exempt from the governance of federal antitrust laws. See Parker v.Brown, 317 U.S. 341 (1943); Scott v. City of Sioux City, 736 F.2d 1207,1211 (8th Cir. 1984). See also Att'y Gen. Op. No. 87-474, a copy of which is enclosed.
Any displacement of competition that would take place as a result of actions taken pursuant to A.C.A. § 23-112-311 would inherently have been authorized by intentional state legislative action. I must therefore conclude that A.C.A. § 23-112-311 does not violate the federal antitrust laws.
The U.S. Constitution
The U.S. Constitution does not contain any provisions that prohibit, perse, provisions such as those set forth in A.C.A. § 23-112-311. However, the provisions of A.C.A. § 23-112-311 could be impacted by the principles that have developed around the equal protection doctrine (see U.S. Const., 14th am.), the doctrine of due process (see U.S. Const., 5th am. and 14th am.), and the doctrine of interstate commerce (see U.S. Const. art. 1, § 8). Nevertheless, these provisions of the U.S. Constitution and the principles that have developed around them do not render A.C.A. § 23-112-311 inherently unenforceable. The question of whether A.C.A. §23-112-311 is unconstitutional under these provisions and principles would depend entirely upon the manner in which the statute is applied. This, of course, would be a fact question that must be determined on a case-by-case basis.
I therefore cannot conclude as a matter of law that A.C.A. § 23-112-311
is unconstitutional.
You have specifically inquired about the applicability of the Supremacy Clause (U.S. Const. art. 7, § 2). That clause states:
 This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.
U.S. Const. art. 7, § 2.
Clearly, the Supremacy Clause would only have the effect of invalidating a state statute if that statute were found to be in conflict with a federal law. Because I have opined that A.C.A. § 23-112-311 does not violate the federal antitrust laws, and because we have identified no other federal statutes that prohibit provisions such as those contained in A.C.A. § 23-112-311, I must conclude that A.C.A. § 23-112-311 does not conflict with federal law, and that, therefore, the Supremacy Clause does not come into play.
The Arkansas Constitution
The only provision of the Arkansas Constitution that touches upon your question is Article 2, § 19, which prohibits monopolies. I have found no other provision of the Arkansas Constitution that has any bearing upon your question. Article 2, § 19 states:
 Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed. . . .
Ark. Const. art. 2, § 19.
The term "monopoly," as used in the quoted provision, is not defined. The Arkansas Supreme Court has had several opportunities to address the provision, however, thus giving a certain amount of guidance as to the types of monopolistic conduct that are permissible and those that are not. The court's interpretation of this constitutional provision has brought about differing results. In some instances, the court has strictly disallowed a business practice or situation that resulted in the exclusion of competition. In other instances, however, the court has seen fit to allow a certain level of exclusivity. Two cases that exemplify these differing results are North Little Rock Transportation Co. v. Cityof North Little Rock, 207 Ark. 976, 184 S.W.2d 52 (1944) and Bridges v.Yellow Cab Co., 241 Ark. 204, 406 S.W.2d 879 (1966).
In North Little Rock Transportation, a taxi cab company (NLR Transp.) challenged the validity of a statute that allowed the municipality to regulate cab companies. Pursuant to the statute, NLR Transp. applied for a permit to operate in North Little Rock. Also pursuant to the statute, Checker Cab Company, which held the only permit to operate in North Little Rock, was allowed to be heard on the issue of whether NLR Transp. should be granted a permit to operate. Under the statute, the city was to determine whether a grant of the requested permit would serve the public convenience and necessity. If it found that the market required more extensive provision of taxi service, the statute required that the company holding the permit to operate be allowed a certain amount of time to meet the increased demand. Under the statute, if the company did meet the increased demand, the permit application of the new company was to be rejected, and the already-operating company was to be allowed to continue to operate indefinitely. Accordingly, the City of North Little Rock allowed checker cab company an opportunity to meet the increased demand that it found, at which point NLR Transp. appealed to circuit court. The circuit court affirmed the city's decision. The Arkansas Supreme Court, however, reversed the decision. After quoting article 2, § 19 of the Arkansas Constitution, the court stated:
 This language is too clear to need elucidation, and no amount of judicial interpretation should ever be permitted to cause the slightest deviation from the clear language of the constitutional inhibition. . . . [W]e hold that [the provisions under consideration] create a monopoly within the constitutional inhibition. . . . [I]t is clear that a monopoly was created by the legislature for the benefit of those taxicab companies in operation in cities of the first class on the effective date of this act. Not only was new competition stifled, it was entirely prevented as long as [the provisions under consideration] remained in force.
North Little Rock Transportation, 207 Ark. at 983. Accord, Upchurch v.Adelsberger, 231 Ark. 677, 332 S.W.2d 242 (1960) (City ordinance requiring that all printed matter used by the city bear a particular union label held violative of Ark. Const. art 2, § 19).
The Arkansas Supreme Court distinguished the North Little RockTransportation decision in Bridges v. Yellow Cab Co., supra. There, a limousine service provider (Bridges) owned the exclusive franchise to operate a limousine service "stand" at the airport, which consisted of the exclusive right to four parking spaces at the airport. Yellow Cab Co. challenged that exclusive right, arguing that Bridges' franchise violated the constitutional prohibition against monopolies. In support of its argument, Yellow Cab relied on the North Little Rock Transportation
decision. The Arkansas Supreme Court rejected Yellow Cab Co.'s argument. In doing so, it distinguished the North Little Rock Transportation
decision, citing these key differences in the two scenarios: (1) The exclusivity in Bridges' franchise was narrow, encompassing only the exclusive right to the parking spaces at the airport. Other cab companies were allowed to operate in the city and at the airport. By contrast, the exclusivity in North Little Rock Transportation was broad, encompassing the entire city, and excluding any operation by competing companies. (2) Bridges' franchise was not indefinite; it was to last for a specified period of time. By contrast, the exclusivity in North Little RockTransportation was to continue for an indefinite period of time. (3) Bridges had an obligation to provide service for the life of the franchise, whereas Checker Cab Co. in North Little Rock Transportation
had no obligation to operate for any stated period of time. (4) InBridges, it had been found that there was not enough demand for the business to be maintained on a competitive basis. By contrast, it was established in North Little Rock Transportation that the market would support competition.
Although the provisions of A.C.A. § 23-112-311 appear to be closely analogous to the statute under consideration in North Little RockTransportation, I do not, on the basis of that decision, conclude that A.C.A. § 23-112-311 is unconstitutional. The decisions in North LittleRock Transportation and Bridges indicate that whether the provisions of article 2, § 19 of the Arkansas Constitution will operate to invalidate a particular statutory provision will depend largely upon the facts surrounding the application of the statute.
It should be noted that under Arkansas law, all statutory enactments are entitled to a presumption of constitutionality. Urrey Ceramic Tile v.Mosley, 304 Ark. 711, 805 S.W.2d 54 (1991).
In light of the fact-intensive nature of an inquiry under article 2, § 19, and in light of the presumption of constitutionality, I cannot conclude, as a matter of law, that the provisions of A.C.A. § 23-112-311
violate the Arkansas Constitution. However, I note that given particular facts, the statute could be held to be unconstitutional. In short, I conclude that A.C.A. § 23-112-311 is not unconstitutional on its face, but that it could be found to be unconstitutional as applied.
Superseding Arkansas Statutes
I have found no Arkansas statutes that would have the effect of superseding the provisions of A.C.A. § 23-112-311 or of prohibiting actions taken pursuant to those provisions. Although the Unfair Practices Act (A.C.A. § 4-75-201 et seq.) does prohibit the destruction of competition, it prohibits only destruction that is accomplished through certain enumerated unfair practices, such as discriminatory pricing.See, e.g., A.C.A. § 4-75-207, -208, -209. None of the practices enumerated would encompass actions taken pursuant to A.C.A. § 23-112-311.
I have found no other Arkansas statutes that touch upon the issues that you have raised. I therefore conclude that A.C.A. § 23-112-311 is not superseded by any other Arkansas statute.
Arkansas Case Law
It is my opinion that Arkansas case law does not provide any explicit basis for a holding that the provisions of A.C.A. § 23-112-311 are unenforceable. An argument could, of course, be made that A.C.A. §23-112-311 represents an improper exercise of police power by the state. The success of such an argument would naturally be dependent upon the facts established for and determined by the court hearing the argument.
With regard to this issue, the Arkansas Supreme Court has stated: "[T]he police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise." City of LittleRock v. Smith, 204 Ark. 692, 696, 173 S.W.2d 705 (1942), quoting Beatyv. Humphrey, 195 Ark. 1008, 115 S.W.2d 559 (1939).
Addressing the police power issue in the context of a monopoly challenge, the Arkansas Supreme Court stated in North Little RockTransportation, supra:
 It is true that the anti-monopoly provision in our constitution is to be read along with the police powers and public welfare powers; but even so, when, as here, there is a clear showing of proper exercise of the police and welfare powers, then the questioned law should not be suffered to stand. See Annotation in 53 L.R.A. 763, and Annotation in 1 Ann. Cas. 847.
North Little Rock Transportation, 207 Ark. at 982.
In order for the improper police power argument to succeed, it would be necessary for the proponent of the argument to establish that the procedures provided for under the provisions of A.C.A. § 23-112-311 (like those in North Little Rock Transportation) are not necessary to the protection of the public. If such were successfully established, a court could then conceivably conclude that A.C.A. § 23-112-311 provides for an improper exercise of police power by the state and should therefore be invalidated. Again, however, such a showing would have to be evaluated by a trier of fact, with access to, and in full consideration of, all the relevant evidence.
Because the other Arkansas case precedent that is applicable to your question has come about in the context of constitutional challenges, my opinion as to the remainder of the applicable case law is set forth above under the previous heading, "The Arkansas Constitution."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Please be aware that my office has neither the resources nor the expertise to opine in depth on federal statutory law. For further information about the impact of federal law upon your question, it would be advisable to consult with the U.S. Attorney.